JAMES DUANE CONDIE v. VALDA GERALDINE HARRIS CONDIE

No. 8014DC815

(Filed 21 April 1981)

1. **Divorce and Alimony § 16.6– permanent alimony – abandonment – sufficiency of evidence**

   In an action for absolute divorce where defendant filed a counterclaim for permanent alimony on the ground of abandonment, evidence was sufficient to raise the reasonable inference that plaintiff brought the parties' cohabitation to an end without justification, without defendant's consent, and without any intention of resuming cohabitation at a later point, where such evidence tended to show that the parties were married in 1955, moved with their children to Chapel Hill in 1973, and did not suffer any serious marital problems until 1976 when problems arose concerning plaintiff's relationship with the wife of a friend; in 1976 the parties sold their property in Chapel Hill, purchased another piece of property in Hillsborough, and plaintiff moved into a trailer on the property with three of the children; defendant and the other children remained in Chapel Hill; defendant understood that she and the remaining children were to move to Hillsborough shortly; the parties never discussed the move as being a marriage separation, and defendant never agreed or consented to such a separation; defendant made several attempts to get the parties back together, including going to Hillsborough to see plaintiff and their sons as much as possible; and in June 1978 plaintiff told defendant that she definitely would not be moving to Hillsborough with the rest of the family.

2. **Divorce and Alimony § 16.8– alimony – sufficiency of evidence to support award**

   Evidence was sufficient to support findings of fact by the trial court and the findings clearly demonstrated that plaintiff was the supporting spouse, defendant was the dependent spouse, plaintiff was financially capable of supporting defendant, and defendant needed $349 sufficiently to meet her monthly obligations; thus, the court could properly conclude that plaintiff should provide defendant with $250 per month as reasonable support.

3. **Appeal and Error § 16.1; Rules of Civil Procedure § 58 – signing of judgment – trial court's authority – order entered after notice of appeal given**

Where the judgment requiring plaintiff to pay permanent alimony was "entered" in open court on 16 April 1980, and notice of appeal from this judgment was timely given, the trial judge had authority under G.S. 1A-1, Rule 58 to approve the form of the judgment and to direct its prompt preparation and filing, and she properly exercised that authority when she approved the written judgment and signed it on 20 May 1980 and when the judgment was filed on 30 May 1980; however, the trial judge did not have authority to enter an order dated 29 July 1980 requiring plaintiff to pay an attorney's fee, since no mention of an attorney's fee was made in the judgment entered 16 April 1980, no reference was made to an attorney's fee in the judgment signed by the judge on 20 May 1980, and the trial judge could not enter an order in the cause since the matter was on appeal pursuant to the notice of appeal given 28 April 1980.

APPEAL by plaintiff from *Galloway, Judge.* Judgment entered 16 April 1980 in District Court, DURHAM County. Heard in the Court of Appeals 10 March 1981.

This is a civil action instituted by plaintiff seeking an absolute divorce from defendant. In a complaint filed 15 October 1979, plaintiff alleged that after approximately 23 years of marriage, he and defendant separated "with the intent to remain permanently separated" on or about 24 August 1978, and that the parties have continued to live separate and apart, with no resumption of the marital relation. Defendant filed answer, admitting the separation, and also filed a counterclaim seeking, *inter alia,* alimony *pendente lite,* custody of the minor children of the marriage, reasonable attorney's fees, and permanent alimony, on the grounds of abandonment. Defendant requested a trial by jury on her claim for permanent alimony.

On 12 December 1979, the court entered a judgment granting plaintiff an absolute divorce from defendant, and on 11 February 1980, the court entered an order denying defendant alimony *pendente lite* and awarding defendant an attorney's fee of $560, but awarding custody of the minor children jointly to both parties. Thereafter, the case proceeded to trial before a jury upon defendant's counterclaim for permanent alimony.

The jury found that plaintiff had "abandoned" defendant "without just cause or provocation or without the consent" of defendant. The court, after finding that defendant was a dependent spouse and that plaintiff was a supporting spouse, and

after a hearing on plaintiff's financial standing, entered the following "Decision of the Court" into the record on 16 April 1980:

> The Court, after hearing all the evidence in the case has decided that Mrs. Condie is a dependent spouse within the meaning of the statute, and Mr. Condie is the supporting spouse. According to the verdict of the Jury in this case, they have found that there was abandonment, which entitles Mrs. Condie to permanent alimony. Based upon the monthly expenses and capability of Mr. Condie and the needs of Mrs. Condie, the Court will require that Mr. Condie pay to the benefit of Mrs. Condie the amount of $250.00 a month permanent alimony.

Plaintiff gave notice of appeal on 28 April 1980.

On 20 May 1980 the trial judge signed a judgment which, *inter alia*, made the following findings of fact with respect to the financial ability and needs of the parties:

> 1. That the plaintiff is an able-bodied person, having the job or position of Assistant Director of Housing at University of North Carolina at Chapel Hill, and he has held this position for several years.

> 2. That the gross income of the plaintiff is in excess of $2,600 per month, and that his annual income is approximately $33,000.

> 3. That the plaintiff has a post-college or graduate education and, in addition to his college degree, he holds graduate degrees at the Masters and Doctorate levels.

> 4. That the defendant is employed by Blue Cross and Blue Shield in the Chapel Hill area, and earns net or take-home pay of $450 per month.

> 5. That the [defendant] has a high school education and she has not completed any education beyond that stage.

> 6. That the defendant has monthly expenses which exceed her net or spendable income by $349.07 per month.

> 7. That the defendant received some contributions from her daughter, Patti, who lives with her, such contributions being approximately $100 per month.

Condie v. Condie

8. That the plaintiff has numerous debts and obligations upon a monthly basis, one of which is a monthly contribution to the Mormon Church of $180, and that the plaintiff also receives $65 per month from one of his sons in order to pay upon one of his loans from the State Employees Credit Union.

9. That since August of 1979 the defendant has received no support from the plaintiff, and that her only source of income other than her earnings and her daughter's contributions had been in the form of a subsidy from the Mormon Church, which has been paying for the defendant's rent since August of 1979.

10. That the defendant is actually substantially dependent upon the plaintiff for her maintenance and support since her monthly obligations exceed her available monthly income by $349.00.

Based upon the jury verdict and her findings, the trial judge ordered plaintiff to pay permanent alimony to defendant in the amount of $250 per month. Thereafter, on 29 July 1980, Judge Galloway made findings and conclusions and ordered plaintiff to pay defendant an attorney's fee in the sum of $2,035.

*Grover C. McCain, Jr., and Archbell & Cotter, by James B. Archbell, for the plaintiff appellant.*

*Levine and Stewart, by Michael D. Levine, for the defendant appellee.*

HEDRICK, Judge.

[1] Plaintiff contends, based upon his first assignment of error, that the court erred in denying his motions for a directed verdict with respect to defendant's counterclaim. He argues that the evidence presented is insufficient to show abandonment of defendant by plaintiff, but does sufficiently show separation by consent. We do not agree.

One spouse abandons the other spouse, within the meaning of the statute establishing abandonment as one of the grounds entitling a dependent spouse to alimony (G.S. § 50-16.2), where the spouse brings the cohabitation to an end without justification, without the consent of the other spouse, and without the intent of renewing the cohabitation. *Panhorst v. Panhorst,* 277

N.C. 664, 178 S.E. 2d 387 (1971). The evidence in the present case, when construed in the light most favorable to defendant, tends to show the following:

Plaintiff and defendant were married in June of 1955. In 1973, plaintiff, defendant, and their six children moved to Chapel Hill. The parties did not suffer any serious marital problems until 1976, when problems arose concerning plaintiff's relationship with the wife of a friend. Also in 1976, the parties sold their property in Chapel Hill, and purchased another piece of property in Hillsborough because defendant felt that relocation of the family would relieve some of the financial pressures the family was feeling, and some of the physical strain plaintiff was experiencing with his job. The property had a two bedroom mobile home on it, and in August 1976 plaintiff, with defendant's assistance, moved into the trailer with three of their sons. Defendant and their daughters remained in Chapel Hill. Defendant reluctantly agreed to the move since she understood that she and their daughters were to move there shortly, once an addition could be built on the mobile home to accommodate them. Although the parties had been having some marital difficulties, they had never discussed the move as being a marriage separation, and defendant never agreed or consented to such a separation. Plaintiff did show defendant some plans for a proposed addition to the mobile home several months later, but no addition was ever built.

After the move, the family remained in close contact and the parties remained intimate for several months, but strains soon developed in the marriage. When defendant would go to the home in Hillsborough, plaintiff would leave the room when she came in, or in some cases he would leave the trailer. Plaintiff's visits to see defendant and their daughters in Chapel Hill became less and less frequent until the visits stopped altogether. Plaintiff never told defendant why she could not move to Hillsborough, other than simply stating that "it would not be a good thing to do," and defendant knew of nothing she had done to prevent him from wanting her to move to Hillsborough.

The parties began attending marriage counseling sessions in October 1976, continuing into January 1977. Though defendant was using the sessions in an attempt to "preserve the

marriage," plaintiff told her that he did not love her and had not loved her for ten years. After this time, defendant continued in her attempts to get the parties "back together," including going to Hillsborough to see plaintiff and their sons as much as possible, but plaintiff stated he needed more time and refused her offers to live together. The first time that plaintiff told defendant that she definitely would not be moving to Hillsborough with the rest of the family was in June 1978. Plaintiff began dating another woman, but defendant never thought that the marriage "had gone so far that it could not be fixed" until the divorce was granted and plaintiff had remarried.

We think this evidence is sufficient to raise the reasonable inference that plaintiff brought the parties' cohabitation to an end without justification, without defendant's consent, and without any intention of resuming cohabitation at a later point. The trial judge thus properly submitted the issue of abandonment to the jury, and this assignment of error is without merit.

[2] Based upon his second and fourth assignments of error, plaintiff contends, in substance, that the evidence does not support the findings of fact, and that these findings in turn are insufficient and do not support the conclusions of law drawn therefrom. We disagree. The findings challenged by plaintiff relate to the excess of defendant's monthly expenses over her monthly income, and her dependence on plaintiff for that difference. The parties stipulated that defendant's expenses exceeded her income by $349.07 per month, and the record contains ample competent evidence that defendant had no other means with which to defray the excess expenses. We hold that the evidence is sufficient to support the challenged findings, as well as the other findings of fact made by the trial judge. The findings of fact, in turn, are sufficient and they support the conclusions of law made by the trial judge. The findings clearly demonstrate that plaintiff is the supporting spouse, that defendant is the dependent spouse, that plaintiff is financially capable of supporting defendant, and that defendant needs $349 to sufficiently meet her monthly obligations. Thus, the court could properly conclude that plaintiff should provide defendant with $250 per month as reasonable support. The findings and conclusions therefore support the order requiring plaintiff to pay defendant $250 per month as permanent alimony, and these assignments of error are not sustained.

**[3]** By his third and fifth assignments of error, plaintiff challenges the authority of the trial judge, Judge Galloway, to sign the judgment on 20 May 1980, and to sign the order with respect to attorney's fees on 29 July 1980. G.S. § 1A-1, Rule 58 in pertinent part provides:

> In other cases where judgment is rendered in open court, the clerk shall make a notation in his minutes as the judge may direct and such notation shall constitute the entry of judgment for the purposes of these rules. The judge shall approve the form of the judgment and direct its prompt preparation and filing.

The record before us clearly discloses that the judgment requiring plaintiff to pay permanent alimony in the amount of $250 per month was "entered" in open court on 16 April 1980. Notice of appeal from this judgment was timely given in accordance with G.S. § 1-279 and Rules 3(c) and 27(a) of the Rules of Appellate Procedure. Judge Galloway signed the written judgment on 20 May 1980, and the written judgment was filed 30 May 1980. We hold that the record discloses that Judge Galloway had the authority under G.S. § 1A-1, Rule 58 to approve the form of the judgment and to direct its prompt preparation and filing, and that she properly exercised that authority when she approved the written judgment and signed it on 20 May 1980, and when the judgment was filed on 30 May 1980.

We also hold, however, that the record affirmatively discloses that Judge Galloway had *no* authority to enter the order dated 29 July 1980 requiring plaintiff to pay an attorney's fee. Although defendant sought an attorney's fee in her counterclaim, and even obtained an order for an attorney's fee *pendente lite*, no mention of an attorney's fee was made in the judgment entered 16 April 1980. Furthermore, no reference was made to an attorney's fee in the judgment signed by Judge Galloway on 20 May 1980. In addition, the record before us does not indicate that Judge Galloway was assigned to preside over the session of court on 29 July 1980, as would be required by G.S. § 7A-192 before Judge Galloway could enter the order. Assuming *arguendo* that the case was properly calendared for hearing a motion in the cause, and there is nothing to indicate that such a motion was made or that plaintiff had notice of such a motion, Judge Galloway was *functus officio* to enter any order in the cause,

First Citizens Bank v. Holland

since the matter was on appeal pursuant to the notice of appeal given 28 April 1980. *Joyner v. Joyner*, 256 N.C. 588, 124 S.E. 2d 724 (1962); *Carpenter v. Carpenter*, 25 N.C. App. 307, 212 S.E. 2d 915 (1975). Thus, the order entered 29 July 1980 requiring plaintiff to pay an attorney's fee in the amount of $2,035 must be vacated.

The result is: The judgment entered on 16 April 1980, and signed on 20 May 1980 and filed on 30 May 1980, requiring plaintiff to pay permanent alimony in the amount of $250 per month is affirmed; the order entered 29 July 1980 requiring plaintiff to pay an attorney's fee in the amount of $2,035 is vacated.

Affirmed in part; vacated in part.

Judges WEBB and HILL concur.