# COURT OF APPEALS

## OF

## NORTH CAROLINA

### AT

### RALEIGH

IN THE MATTER OF: J.B.

No. COA04-579

(Filed 2 August 2005)

**1. Appeal and Error— preservation of issues—failure to argue**

The assignment of error that respondent mother omitted from her brief is deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

**2. Process and Service— termination of parental rights— service of summons on guardian ad litem's attorney advocate instead of guardian ad litem**

The trial court did not err in a termination of parental rights case by exercising personal jurisdiction over respondent mother even though respondent contends the minor child was improperly served when the summons required by N.C.G.S. § 7B-1106(a)(5) was served upon the guardian ad litem's attorney advocate rather than the guardian ad litem, because: (1) assuming arguendo that this was error, the guardian ad litem did not object at trial to the sufficiency of service, nor does the guardian ad litem argue on appeal that the trial court lacked jurisdiction over the minor child; and (2) respondent has failed to demonstrate any prejudice to her resulting from an alleged failure to properly serve the minor child, and thus, it cannot be concluded that respondent was an aggrieved party directly and injuriously affected by the alleged error.

1

**3. Termination of Parental Rights— subject matter jurisdiction—termination of parental rights order entered while prior appeal pending—motion to stay proceedings**

The trial court did not err in a termination of parental rights case by denying respondent mother's request for a stay in the proceedings and thus exercising subject matter jurisdiction over the case by entering the instant order terminating respondent's parental rights while respondent's appeal of prior orders was pending before the Court of Appeals, because: (1) a trial court retains jurisdiction to terminate parental rights during the pendency of a custody order appeal in the same case; (2) where a termination order is entered while a prior custody order is pending, the termination order necessarily renders the pending appeal moot; and (3) the trial court provided several findings of fact in support of its decision to exercise jurisdiction over the case in general and the termination proceedings in particular, and respondent does not object to any of these findings of fact on appeal.

**4. Termination of Parental Rights; Trials— motion to continue to gather evidence—recent incarceration**

The trial court did not abuse its discretion in a termination of parental rights case by denying respondent mother's third motion to continue the trial based on respondent's recent incarceration in Oregon prior to the hearing and alleged insufficient time to gather evidence, because: (1) where the lack of preparation for trial is due to a party's own actions, the trial court does not err in denying a motion to continue; (2) respondent's incarceration in Oregon was the result of her own actions in abducting the minor child; and (3) the trial court granted respondent a continuance more than one month before her incarceration which was sought by respondent for the express purpose of allowing her to gather the documents she now asserts she was unable to attain. N.C.G.S. § 7B-803.

**5. Indigent Defendants— request for expenses—expert witness fees**

The trial court did not abuse its discretion in a termination of parental rights case by denying respondent mother's request for expenses related to expert witness fees, because: (1) respondent has failed to demonstrate how the diagnosis and records of a new mental health care provider would materially assist her in her

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

trial preparation; (2) respondent is unable to demonstrate how she was deprived of a fair trial without the requested expert assistance; and (3) there is no indication in the record that respondent submitted any bills or costs related to depositions and records of her current therapists despite the trial court's instruction allowing respondent to do so. N.C.G.S. § 7A-450.

## 6. Discovery— termination of parental rights—motion to interview minor child

The trial court did not abuse its discretion in a termination of parental rights case by denying respondent mother's motion to interview the minor child, because: (1) as evidenced by multiple findings of fact contained within multiple court orders, any contact respondent had with her son was disruptive to his own therapeutic progress; (2) the trial court was concerned with respondent's behavior in attempting to learn of her son's whereabouts when in 2001 respondent removed her son from foster care in North Carolina and absconded to a homeless shelter in South Carolina, and the trial court found as fact that respondent abducted her son for the second time on 23 May 2003 after waiting for him at his school bus stop, getting him in her vehicle, and taking him to Oregon; and (3) the trial court did not prevent respondent from subpoenaing her son to testify at the termination hearing.

## 7. Evidence— prior disposition orders—judicial notice—independent determination

The trial court did not err in a termination of parental rights case by admitting into evidence prior disposition orders in the matter even though respondent mother contends their exclusion is required since they were based upon a lower evidentiary standard, because: (1) respondent failed to cite authority for the contention that judicial notice is inappropriate where the other orders have a lower evidentiary standard, and she is unable to overcome the well-established supposition that the trial court in a bench trial is presumed to have disregarded any incompetent evidence; and (2) nothing in the record indicates that the trial court failed to conduct the independent determination required at a termination hearing when prior disposition orders have been entered in the matter.

### 8. Evidence— mental health records of parent—hospital medical records—previously admitted into evidence

The trial court did not err in a termination of parental rights case by admitting into evidence respondent mother's mental health records even though respondent contends they were not covered in the definition of hospital medical records under N.C.G.S. Ch. 122C, because: (1) N.C.G.S. § 122C-3(9) defines confidential information as any information, whether recorded or not, relating to an individual served by a facility that was received in connection with the performance of any function of the facility, and N.C.G.S. § 122C-54(a) requires a medical facility to disclose confidential information if a court of competent jurisdiction issues an order compelling disclosure; and (2) the mental health records now challenged were originally admitted into evidence during a permanency planning review hearing held 13 and 15 March 2002, respondent did not appeal the trial court's subsequent order, the trial court did not err by admitting into evidence prior disposition records in the matter, and the trial court's termination of parental rights was based upon a determination independent of the prior disposition orders in the case.

### 9. Appeal and Error— preservation of issues—failure to object

Although respondent mother contends the trial court erred in a termination of parental rights case by allowing two therapists to testify and render conclusions regarding their evaluations, respondent waived her right to challenge this issue on appeal because: (1) respondent offered no objection during the hearing to either of the witnesses' qualifications; and (2) on appeal, respondent does not point to any testimony by the witnesses admitted over her objection.

### 10. Termination of Parental Rights— exclusion of parent from courtroom during child's testimony—*Eldridge* factors

The trial court did not err in a termination of parental rights case by excluding respondent mother from the courtroom during her minor son's testimony without providing specific findings and conclusions regarding the minimum requirements of fundamental fairness and its relation to the trial court's decision to exclude respondent from the courtroom, because: (1) trial courts are not required to make the specific findings and conclusions asserted by respondent; (2) a review of the *Eldridge* factors leads to the

IN RE J.B.

[172 N.C. App. 1 (2005)]

conclusion that the trial court did not err when the risk of error from the procedure employed at trial was slight in light of the fact that respondent was placed in an adjacent room with a television monitor and had telephonic access to her attorneys; and (3) respondent did not suffer prejudice as a result of her exclusion from the courtroom since the trial court preserved respondent's opportunity to cross-examine the minor child through her court-appointed counsel.

**11. Termination of Parental Rights— disposition hearing—separate hearing not required**

The trial court did not improperly fail to conduct a dispositional hearing prior to concluding that respondent mother's parental rights should be terminated, because: (1) there is no requirement that the adjudicatory and dispositional stages be conducted at two separate hearings; (2) absent affirmative indication to the contrary, appellate courts presume that the judge sitting without a jury is able to consider the evidence in light of the applicable legal standard and to determine whether grounds for termination exist before proceeding to consider evidence relevant only to the dispositional stage; (3) the trial court accepted evidence from both parties for dispositional purposes during the adjudication stage and the trial court conducted a disposition hearing following the adjudicatory stage; and (4) respondent was given ample opportunity to present evidence and provide argument regarding disposition.

**12. Termination of Parental Rights— best interests of child— specific oral findings regarding disposition not required**

The trial court did not abuse its discretion by concluding that it was in the minor child's best interests to terminate respondent mother's parental rights even though respondent contends the trial court failed to make specific oral findings regarding disposition, because: (1) N.C.G.S. § 7B-1110(a) does not require the trial court to issue oral findings with regard to its determination; (2) the terms of disposition must have been stated with particularity, and following the closing of the proceedings in the instant case, the trial court stated from the bench that it was terminating respondent's parental rights; and (3) the trial court's written order conforms with its oral determination at trial, and its findings of fact are based on competent evidence contained within the record.

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

**13. Termination of Parental Rights— prevailing party drafting order—common practice**

The trial court did not err by directing petitioner's attorney to draft the order for termination of parental rights, because: (1) nothing in N.C.G.S. § 1A-1, Rule 58 or common practice precludes the trial court from directing the prevailing party to draft an order on its behalf; and (2) the trial court indicated that it had determined that sufficient grounds exist to terminate respondent's parental rights pursuant to each of the statutory grounds alleged in the petition, and it also designated specific findings of fact that it wanted included in the order.

**14. Termination of Parental Rights— delay in entering order— failure to demonstrate prejudice**

The trial court did not commit prejudicial error by failing to enter the order terminating respondent mother's parental rights within thirty days as required by N.C.G.S. § 7B-1110(a) when the termination hearing was completed on 23 July 2003 and the order was not filed until 27 October 2003, because respondent failed to sufficiently demonstrate prejudice regarding the delay in the entry of the termination order.

Appeal by respondent from order entered 27 October 2003 by Judge Marvin P. Pope, Jr., in Buncombe County District Court. Heard in the Court of Appeals 26 January 2005.[1]

*Charlotte A. Wade, Esq., for petitioner-appellee Buncombe County Department of Social Services.*

*Judy N. Rudolph, for guardian ad litem-appellee.*

*Hall & Hall, Attorneys at Law, P.C., by Susan P. Hall, for respondent-appellant.*

TIMMONS-GOODSON, Judge.

Respondent-mother appeals the trial court order terminating her parental rights to her minor son, John.[2] For the reasons discussed herein, we affirm the order of the trial court.

1. By order of this Court, the filing of this opinion was delayed pending the outcome of our Supreme Court's decision in *In re R.T.W.*, 359 N.C. 539, —— S.E.2d —— (Filed 1 July 2005) (No. 417PA04).

2. For the purposes of this opinion, we will refer to the minor child by the pseudonym "John."

IN RE J.B.

[172 N.C. App. 1 (2005)]

The facts and procedural history pertinent to the instant appeal are as follows: On 7 October 2002, Buncombe County Department of Social Services ("petitioner") filed a petition to terminate respondent's parental rights to John. The petition asserted that sufficient evidence exists to terminate respondent's parental rights to John pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2) and (6), in that respondent: (i) neglected John by failing to provide him with appropriate care, by subjecting him to an environment injurious to his emotional welfare, and by emotionally abusing John; (ii) willfully left John in foster care or placement out of the home for more than twelve months without making reasonable progress under the circumstances to correct those conditions which led to John's removal; and (iii) was incapable of providing for the proper care and supervision of John. The case proceeded to trial, and, after hearing arguments and receiving evidence from the parties, the trial court concluded that sufficient grounds exist to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (6). After concluding that it was in the best interests of John to do so, the trial court entered an order terminating respondent's parental rights on 27 October 2003. It is from this order that respondent appeals.

[1] We note initially that respondent's brief contains arguments supporting only fourteen of the original fifteen assignments of error. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the omitted assignment of error is deemed abandoned. Therefore, we limit our present review to those issues properly preserved by respondent for appeal.

The issues on appeal are whether the trial court erred by: (I) exercising personal jurisdiction over respondent; (II) denying respondent's request for a stay in the proceedings and thus exercising subject matter jurisdiction over the case; (III) denying respondent's motion to continue the trial; (IV) denying respondent's request for expenses; (V) denying respondent's motion to interview John; (VI) admitting into evidence prior disposition orders in the matter; (VII) admitting into evidence respondent's mental health records; (VIII) allowing two therapists to testify and render conclusions regarding their evaluations; (IX) excluding respondent from the courtroom during John's testimony; (X) concluding that respondent's parental rights should be terminated prior to a disposition hearing; (XI) concluding that it was in John's best interests to terminate respondent's parental rights; (XII) directing petitioner's attorney to draft the order for ter-

mination of parental rights; and (XIII) failing to enter the order terminating respondent's parental rights within thirty days.

## I. Personal Jurisdiction

[2] Respondent first argues that the trial court erred by exercising personal jurisdiction over her. Respondent asserts that the failure to properly serve John prevented the trial court from acquiring jurisdiction over respondent. We disagree.

Upon the filing of a petition to terminate parental rights, the Juvenile Code requires that a summons regarding the proceeding be issued to the juvenile whose rights are to be terminated. N.C. Gen. Stat. § 7B-1106(a)(5) (2003). "[T]he summons and other pleadings or papers directed to the juvenile shall be served upon the juvenile's guardian ad litem if one has been appointed[.]" *Id.* In the instant case, the record reflects that the summons required by N.C. Gen. Stat. § 7B-1106(a)(5) was served upon the guardian *ad litem's* attorney advocate rather than the guardian *ad litem.* Assuming *arguendo* that this was error, we note that the guardian *ad litem* did not object at trial to the sufficiency of service, nor does the guardian *ad litem* argue on appeal that the trial court lacked jurisdiction over John. Instead, respondent objects to the sufficiency of the service, arguing that the failure to properly serve John constitutes grounds for reversal of the trial court order.

"Only a 'party aggrieved' may appeal from an order or judgment of the trial division." *Culton v. Culton,* 327 N.C. 624, 625, 398 S.E.2d 323, 324 (1990) (quoting N.C. Gen. Stat. § 1-271). "An aggrieved party is one whose rights have been directly and injuriously affected by the action of the court." *Culton,* 327 N.C. at 625, 398 S.E.2d at 324. In the instant case, respondent has failed to demonstrate any prejudice to her resulting from the alleged failure to properly serve John. Thus, we are unable to conclude that respondent was "directly and injuriously" affected by the alleged error, and, accordingly, we overrule this argument.

## II. Subject Matter Jurisdiction

[3] Respondent presents two arguments asserting that the trial court erred by exercising subject matter jurisdiction over the case. Respondent first asserts that the trial court erred by denying her request for a stay in the termination proceeding pending this Court's determination of her appeal of previous orders. Respondent also asserts that the trial court did not have subject matter jurisdiction

IN RE J.B.

[172 N.C. App. 1 (2005)]

over the case at the time of the termination hearing, "pursuant to the decision of this [C]ourt captioned as *In re J.B.*, 03-807[.]" Because of the similarity of these two arguments, we have chosen to address them concurrently, and, in light of the record before us, we conclude that the trial court did not err.

In *In re J.B.*, 164 N.C. App. 394, 595 S.E.2d 794 (2004) ("*J.B. I*"), this Court reviewed a previous appeal by respondent stemming from trial court orders changing the permanency plan for John, releasing petitioner from all efforts to reunify respondent with John, and dismissing respondent's previous appeals regarding production of medical records and permanency planning hearings. Respondent contended in *J.B. I* "that the trial court did not possess subject matter jurisdiction in this matter because [John] and respondent were residing outside of North Carolina at the time the proceedings in this case were initiated." *Id.* at 396, 595 S.E.2d at 795. After reviewing the record, we were unable to conclude whether the trial court possessed subject matter jurisdiction. We thus vacated the order and remanded the case with instructions to the trial court to "make specific findings of fact to support its conclusion of law that it possessed subject matter jurisdiction under the [Uniform Child Custody Jurisdiction and Enforcement Act] and [Parental Kidnapping Prevention Act] as outlined in N.C. Gen. Stat. § 50A-201." *Id.* at 398, 595 S.E.2d at 797.

The record in the instant case reveals that, while respondent's prior appeal was pending, the trial court entered the instant order terminating respondent's parental rights. Respondent contends that the trial court was prohibited from entering an order terminating her parental rights while her prior appeal was pending before this Court. However, our Supreme Court has recently issued an opinion in *In re R.T.W.*, 359 N.C. 539, —— S.E.2d —— (Filed 1 July 2005) (No. 417PA04), whereby the Court held that "a trial court retains jurisdiction to terminate parental rights during the pendency of a custody order appeal in the same case." 359 N.C. at 553, —— S.E.2d at ——. The Court noted that "[e]ach termination order relies upon an independent finding that clear, cogent, and convincing evidence supports at least one of the grounds for termination under N.C.G.S. § 7B-1111[,]" *Id.* at 553, —— S.E.2d at ——, and it concluded that, where a termination order is entered while a prior custody order is pending, "[t]he termination order necessarily renders the pending appeal moot." *Id.* at 553, —— S.E.2d at ——. In the instant case, the trial court provided several findings of fact in support of its decision to exercise jurisdiction over the case in general and the termination proceedings in particular.

Respondent does not object to any of these findings of fact on appeal. Therefore, in light of the foregoing, we conclude that the trial court had subject matter jurisdiction over the case and did not err in denying respondent's motion to stay the termination proceeding. Accordingly, this argument is overruled.

### III. Motion to Continue

[4] Respondent also argues that the trial court erred by denying her motion to continue the termination hearing. Respondent asserts that the trial court was required to continue the termination hearing due to respondent's recent incarceration. We disagree.

N.C. Gen. Stat. § 7B-803 (2003) provides as follows:

The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.

A trial court's decision regarding a motion to continue is discretionary and will not be disturbed on appeal absent a showing of abuse of discretion. *In re Humphrey*, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003) (citing *Doby v. Lowder*, 72 N.C. App. 22, 24, 324 S.E.2d 26, 28 (1984)). Continuances are generally disfavored, and the burden of demonstrating sufficient grounds for continuation is placed upon the party seeking the continuation. *Id.* "Where the lack of preparation for trial is due to a party's own actions, the trial court does not err in denying a motion to continue." *In re Bishop*, 92 N.C. App. 662, 666, 375 S.E.2d 676, 679 (1989).

In the instant case, respondent requested that the trial court continue the termination hearing because she had been incarcerated prior to the hearing and was thus unable to gather evidence located in Oregon. However, as the trial court noted in the order terminating respondent's parental rights, the termination hearing had been rescheduled numerous times prior to that proceeding which eventually occurred the week of 21 July 2003. The termination hearing was originally scheduled for March 2003, but, upon agreement of the parties, the matter was continued until 21 April 2003. On 21 April

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

2003, respondent requested a continuance on the grounds that she had been injured in an automobile accident in Oregon and was unable to attend the termination hearing in North Carolina. She also expressed that she needed additional time to secure evidence for the hearing. The trial court granted respondent's motion and ordered that the termination hearing be rescheduled for 13 June 2003. However, on or about 23 May 2003, respondent returned to North Carolina from Oregon and allegedly kidnapped John. In its order terminating parental rights, the trial court made the following pertinent finding of fact:

> On or about May 23, 2003, [respondent] came back to North Carolina and abducted [John] by waiting for him at his school bus stop and getting him in her vehicle and taking him to Oregon. This was at least the second time [respondent] had removed [John] from his foster placement and left the state with him. A felony warrant was issued against [respondent] and [respondent] and [John] were located in Oregon. On June 5, 2003 [respondent] was arrested for felony abduction and [John] was returned to North Carolina. [Respondent] initially resisted being ex[tradited] back to North Carolina, but she subsequently agreed to and was ex[tradited] back to North Carolina.

Following her arrest for felony kidnapping, respondent filed a second motion to continue the termination hearing and challenged her extradition to North Carolina. The trial court granted respondent's second motion to continue and ordered that the termination hearing be rescheduled to commence on 21 July 2003.

We note that respondent's incarceration in Oregon was the result of her own actions in abducting John, and we also note that the trial court granted respondent a continuance more than one month before her incarceration—a continuance sought by respondent for the express purpose of allowing her to gather the documents she now asserts she was unable to obtain. In light of the foregoing, we conclude that the trial court did not abuse its discretion by denying respondent's third motion to continue. Therefore, we overrule this argument.

### IV. Request for Expenses

[5] Respondent further argues that the trial court erred by denying her request for expenses related to expert witness fees. Respondent asserts that she sufficiently demonstrated her need for assistance

in procuring and paying for expert witness testimony and was thus entitled to expenses from the State. We disagree.

N.C. Gen. Stat. § 7A-450 (2003) provides as follows:

(b) Whenever a person, under the standards and procedures set out in this Subchapter, is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation. The professional relationship of counsel so provided to the indigent person he represents is the same as if counsel had been privately retained by the indigent person.

"[T]he appointment of experts to assist an indigent in his defense depends really upon the facts and circumstances of each case and lies, finally, within the discretion of the trial judge." *State v. Gray*, 292 N.C. 270, 277, 233 S.E.2d 905, 910-11 (1977) (citing *State v. Tatum*, 291 N.C. 73, 229 S.E.2d 562 (1976)).

To establish a particularized need for expert assistance, a defendant must show that: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that the expert will materially assist him in the preparation of his case. Although particularized need is a flexible concept and must be determined on a case-by-case basis, "[m]ere hope or suspicion that favorable evidence is available is not enough to require that such help be provided[.]" The trial court has discretion to determine whether a defendant has made an adequate showing of particularized need. In making its determination the trial court should consider all the facts and circumstances known to it at the time the motion for psychiatric assistance is made.

*State v. Page*, 346 N.C. 689, 696-97, 488 S.E.2d 225, 230 (1997) (citations omitted) (alteration in original), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651 (1998).

In the instant case, on 11 April 2003, respondent filed a pretrial motion requesting "approval of expenses for supporting services; specifically, for the services of expert witnesses and/or expenses related to taking the depositions of mental health treatment providers in the State of Oregon." In support of this motion, respondent asserted that she had "lived in Oregon for some time and her current and most recent mental health providers are all located in the state of Oregon[,]" and that she "need[ed] approval . . . for expenses in order to secure the testimony of the Providers who can establish [her] cur-

rent mental health status . . . ." On 21 April 2003, the trial court denied respondent's request, finding in pertinent part that

> [Respondent] did not provide to the court any showing of need to have the court appoint and pay for expert witnesses in Oregon as [respondent] has her own therapists in Oregon who have been addressing these issues with [respondent]. The court did advise [respondent's] attorney that the attorney can submit any bills for the court's consideration concerning a telephone deposition for [respondent] with her therapist, or with any costs related to providing records concerning [respondent's] relationship with the therapist, the therapist's treatment for [respondent], any diagnosis, and any treatment recommendations, and the court will make a determination at that time.

After reviewing the record in the instant case, we conclude that respondent has failed to demonstrate how the diagnosis and records of a new mental health care provider would "materially assist" her in her trial preparation, and we further conclude that respondent is unable to demonstrate how she was deprived of a fair trial without the requested expert assistance. Moreover, we note that there is no indication in the record that respondent submitted any bills or costs related to depositions and records of her current therapists, despite the trial court's instruction allowing respondent to do so. In light of the foregoing, we conclude that the trial court did not abuse its discretion in denying respondent's request, and, accordingly, we overrule this argument.

### V. Motion to Interview John

[6] Respondent also argues that the trial court erred by denying her motion to interview John. Respondent asserts that by preventing her from interviewing John, the trial court denied her the right to fully prepare for the termination hearing. We disagree.

Juvenile proceedings are generally governed by the Rules of Civil Procedure. See In re Clark, 303 N.C. 592, 598 n. 3, 281 S.E.2d 47, 52 n. 3 (1981) (proceedings to terminate parental rights are either civil actions or special proceedings, both of which are governed by the Rules of Civil Procedure, "except where a different procedure may be prescribed by statute"); N.C. Gen. Stat. § 7A-193 (2003). N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (2003) provides that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim

IN RE J.B.

[172 N.C. App. 1 (2005)]

or defense of any other party." However, Rule 26(b)(1) provides that discovery may be limited by the court if it is "unduly burdensome." According to the Rule, "[t]he court may act upon its own initiative after reasonable notice or pursuant to a motion under section (c)." *Id.* Similarly, under N.C. Gen. Stat. § 7B-700(a) (2003), the trial court may, "upon written motion of a party and a finding of good cause, . . . order that discovery be denied, restricted, or deferred." We review a trial court's ruling on discovery matters under the abuse of discretion standard. *Ritter v. Kimball*, 67 N.C. App. 333, 335, 313 S.E.2d 1, 2 (1984). A trial court may be reversed for abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

In the instant case, the record indicates that at or prior to a permanency planning and review hearing on 4 February 2002, respondent requested that John be present at all court hearings. In a permanency planning and review order filed 17 April 2002, the trial court found that during supervised visits with John, petitioner required that respondent "keep[] the focus of the visit on [John] and not on her own issues like mental or physical health, felony charges and placement issues for [John], so as to avoid causing [John] undue worry." The trial court thereafter ordered that "[John's] therapist shall provide a written report regarding the appropriateness of [John's] participation in upcoming treatment team meetings and court hearings." In subsequent orders, the trial court continued to require the approval of John's therapists prior to John having contact with respondent. In a permanency planning review order entered 22 October 2002, the trial court extended a restraining order which prevented respondent from contacting John's father. At the time of the permanency planning review hearing, social workers were attempting to extend John's visits with his father, but "this placement" had been "disrupted . . . to the detriment of [John]" by respondent's "continuing and escalating intrusive behaviors of allegedly contacting [John] at the day camp he attended, sending secret messages to [John] though his younger sister . . . , making repeated calls to [John's] new therapist's office, [and] contacting his counselors at the camp wanting information about [John's father's whereabouts]."

In a permanency planning and review order entered 4 June 2003, the trial court granted a request to provide respondent with John's school and medical records, but the trial court required that "any

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

identifying information concerning the foster parents or where [John] lives" be removed from the records prior to their presentation. The trial court later found that John's guardian *ad litem*, social worker, and therapists were concerned that contact with respondent "has given false hope and information to [John], and that this is causing confusion to [John], and causing him to be mistrustful with his social worker and his therapist."

Respondent's instant argument arises from a Motion To Allow Counsel To Interview Child filed 11 April 2003. In that motion, respondent requested that the trial court allow her an "opportunity to interview [John] in order to determine whether or not to present his testimony to the court." Respondent asserted that John was "a fact witness to a number of allegations contained within the petition." Respondent noted the "alleg[ation] that [respondent] had contact with [John] in violation of a court order during the summer of 2002 and that this contact jeopardized [John's] placement[,]" and she asserted that John "would provide the court the very best evidence as to the truth of these allegations." On 6 June 2003, the trial court entered an order denying respondent's motion to interview John, finding as fact that "this motion has already been heard by this court and [John's] therapist is to inform this court when, and if, [John] should have contact with" respondent.

After reviewing the record in the instant case, we conclude that the trial court did not abuse its discretion by denying respondent's request to interview John. As evidenced by multiple findings of fact contained within multiple court orders, any contact respondent had with John was disruptive to his own therapeutic progress. It is clear from the record that the trial court was concerned with respondent's behavior in attempting to learn of John's whereabouts. As detailed above, in the order terminating respondent's parental rights, the trial court found as fact that respondent abducted John "for the second time" on 23 May 2003, after "waiting for him at his school bus stop and getting him in her vehicle and taking him to Oregon." In 2001, respondent removed John from foster care in North Carolina and absconded to a homeless shelter in South Carolina. As discussed below, the trial court did not prevent respondent from subpoenaing John to testify at the termination hearing. Therefore, in light of the foregoing, we conclude that the trial court did not err by denying respondent's motion to interview John. Accordingly, we overrule this argument.

## VI.  *Prior Disposition Orders*

**[7]** Respondent next argues that the trial court erred by admitting into evidence prior disposition orders in the matter. Respondent contends that the trial court was required to exclude the orders because they were based upon a lower evidentiary standard. We disagree.

"A trial court may take judicial notice of earlier proceedings in the same cause." *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991). N.C. Gen. Stat. § 8C-1, Rule 201(b) (2003) provides that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." This Court has previously held that in a termination of parental rights proceeding, prior adjudications of abuse or neglect are admissible, but they are not determinative of the ultimate issue. *In re Huff*, 140 N.C. App. 288, 300, 536 S.E.2d 838, 846 (2000), *disc. review denied*, 353 N.C. 374, 547 S.E.2d 9 (2001); *In re Beck*, 109 N.C. App. 539, 545, 428 S.E.2d 232, 236 (1993).

In the instant case, the trial court allowed petitioner to introduce into evidence "judgments and orders in the underlying juvenile court action, File #01 J 124[.]" Respondent contends that this decision was improper, in that the trial court thereby admitted into evidence review orders from hearings where the evidence was subject to a lower standard of evidentiary proof. However, respondent cites no authority for the contention that "judicial notice is inappropriate where the other orders have a lower evidentiary standard[,]" and she is unable to overcome the well-established supposition that the trial court in a bench trial "is presumed to have disregarded any incompetent evidence." *Huff*, 140 N.C. App. at 298, 536 S.E.2d at 845. Furthermore, nothing in the record indicates that the trial court failed to conduct the independent determination required at a termination hearing when prior disposition orders have been entered in the matter. *In re Ballard*, 311 N.C. 708, 715-16, 319 S.E.2d 227, 232-33 (1984). Therefore, we conclude that the trial court did not err by admitting the prior disposition orders, and, accordingly, we overrule this argument.

## VII.  *Respondent's Mental Health Records*

**[8]** Respondent also argues that the trial court erred by allowing petitioner to introduce into evidence respondent's mental health records. We note initially that respondent originally assigned error to the

admissibility of the records on the basis that she was not given an opportunity to cross-examine the mental health officials who provided the records. However, in her brief, respondent asserts that the mental health records were inadmissible at the termination hearing because they were not covered under the statutory definition of "hospital medical records." It is well established that "the law does not permit parties to swap horses between courts in order to get a better mount" in the appellate court. *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934). Nevertheless, in our discretion pursuant to N.C.R. App. P. 2, we have chosen to review respondent's argument, and, as detailed below, we conclude that the trial court did not err.

The record indicates that the trial court ordered the production of respondent's mental health records at a permanency planning review hearing held prior to the termination hearing. N.C. Gen. Stat. § 1A-1, Rule 45(c)(2) (2003) provides that where a custodian of hospital medical records is ordered to produce certain records in the custodian's custody, the custodian may tender to the court certified copies of the records requested. "Any original or certified copy of records or an affidavit delivered according to the provisions of this subdivision, unless otherwise objectionable, shall be admissible in any action or proceeding without further certification or authentication." *Id.*

N.C. Gen. Stat. § 8-44.1 (2003) provides that copies or originals of hospital medical records

> shall not be held inadmissible in any court action or proceeding on the grounds that they lack certification, identification, or authentication, and shall be received as evidence if otherwise admissible, in any court or quasi-judicial proceeding, if they have been tendered to the presiding judge or designee by the custodian of the records[.]

The statute defines "hospital medical records" as "records made in connection with the diagnosis, care and treatment of any patient or the charges for such services[,]" but it further provides that records covered by N.C. Gen. Stat. §§ 122-8.1 and 90-109.1 are "subject to the requirements of said statutes." *Id.* In the instant case, respondent contends that the challenged medical records were inadmissible based upon the requirements of N.C. Gen. Stat. Chapter 122C, which replaced repealed Chapter 122. We cannot agree.

N.C. Gen. Stat. § 122C-3(9) (2003) defines "confidential information" as "any information, whether recorded or not, relating to an

individual served by a facility that was received in connection with the performance of any function of the facility." N.C. Gen. Stat. § 122C-52(b) (2003) provides that "no individual having access to confidential information may disclose this information." However, N.C. Gen. Stat. § 122C-54 (2003) provides express exceptions to N.C. Gen. Stat. § 122C-52. N.C. Gen. Stat. § 122C-54(a) requires a medical facility to "disclose confidential information if a court of competent jurisdiction issues an order compelling disclosure." In light of these statutory provisions, we conclude that petitioner was not precluded from admitting respondent's mental health records into evidence.

Furthermore, we note that in its order terminating respondent's parental rights, the trial court made the following pertinent findings of fact regarding respondent's mental health records:

35. [Respondent's] mental health records were admitted into evidence at this hearing and were previously admitted into evidence in the underlying juvenile court action, 01 J 124, and were summarized by the court in its order of March 13th & 15th, 2002, which was entered by the court May 13, 2002, as follows: [Respondent] has had 10 mental health hospitalizations in this area since April 1999, approximately half of which were involuntary commitments for various periods of time. Approximately six (6) of these admissions involved some sort of self-inflicted injury of [respondent], all of which were not life threatening. Of the remaining voluntary commitments, two (2) involved non-life threatening, self-inflicted injury by [respondent]. In addition, [respondent] has had four (4) prior mental health admissions in Oregon, three (3) for eating disorders and one (1) for depression. The dates of these admissions to the hospital occurred from March 1999 through November 2001. [Respondent] has been diagnosed with bulimia, borderline personality disorder, and major depression. The records also indicate a history of Percoset abuse and post traumatic stress disorder. It was noted that therapeutic trust was a formidable task for [respondent], as well as confusing boundaries between her and her therapist(s). In April 2000 Dr. Mike Hopping, Medical Director of Blue Ridge Center, stated in writing that [respondent] had "successfully evaded all of our attempts to gain any sort of control over her self destructive behavior", that she gave and then retracted releases of information, maintained another psychiatrist[] at one point, with whom Blue Ridge Center was not allowed to communicate with, attempted to prevent communication between

Blue Ridge Center and in-patient units, and prevented Blue Ridge Center from talking to those who might be supportive to her in the community. It was his opinion that, at that time, long-term in-patient treatment for [respondent] would provide the only possibility for effective containment of her self-destructive or therapy interfering behaviors.

36. [Respondent] continues to exhibit the same types of behaviors that were concerning to the mental health professionals as stated above, and she has continued in her self-destructive and therapy interfering behaviors. She has never effectively addressed her mental health issues, and her mental health issues remain, her mental health issues are serious, her mental health issues seriously impede her ability to provide minimally acceptable parenting for [John], and her mental health issues have a detrimental impact on [John] when he is in her care.

As detailed in finding of fact number thirty-five, the mental health records now challenged by respondent were originally admitted into evidence during a permanency planning review hearing held 13 March 2002 and 15 March 2002. Respondent did not appeal the trial court's subsequent order, and, as discussed above, we conclude that the trial court did not err by admitting into evidence prior disposition records in the matter. Because we also conclude that the trial court's termination of parental rights was based upon a determination independent of the prior disposition orders in the case, we further conclude that the trial court did not err by considering mental health records contained within the underlying file and previously admitted into evidence. Accordingly, we overrule this argument.

### VIII. Testimony of Therapists

[9] Respondent next argues that the trial court erred by allowing Alan Dodson ("Dodson") and Gail Azar ("Azar") to testify and render conclusions regarding their evaluations. Respondent contends that neither therapist was a qualified expert witness, and that their diagnoses were based upon inadmissible evidence. We note that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make[.]" N.C.R. App. P. 10(b)(1). In the instant case, respondent offered no objection during the hearing to either of the witnesses' qualifications, and, on appeal, she does not point to any testimony by the witnesses admitted over her objection. Therefore, we conclude

IN RE J.B.

[172 N.C. App. 1 (2005)]

that respondent has waived the right to challenge the witnesses' testimony on appeal, and, accordingly, we overrule this argument.

## IX. Exclusion of Respondent From Courtroom

**[10]** Respondent next argues that the trial court erred by excluding her from the courtroom during John's testimony. Respondent asserts that the trial court was required to make specific findings of fact and conclusions of law regarding the fundamental fairness of its determination. We disagree.

Because " 'persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs[,]' " this Court has previously held that " '[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures,' which meet the rigors of the due process clause." *In re Murphy*, 105 N.C. App. 651, 653, 414 S.E.2d 396, 397 (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606 (1982)), *aff'd per curiam*, 332 N.C. 663, 422 S.E.2d 577 (1992).

"[T]he nature of process due in parental rights termination proceedings turns on a balancing of the 'three distinct factors' specified in *Mathews v. Eldridge*, 424 US 319, 335, 47 L Ed 2d 18, 96 S Ct 893 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure."

*Murphy*, 105 N.C. App. at 653, 414 S.E.2d at 397-98 (quoting *Santosky*, 455 U.S. at 754, 71 L. Ed. 2d at 607 (citations omitted)) (alteration in original).

In the instant case, respondent contends that the trial court was required to provide specific findings and conclusions regarding the minimum requirements of fundamental fairness and its relation to the trial court's decision to exclude respondent from the courtroom during John's testimony. However, we note that in *Murphy*, "the record d[id] not disclose whether the trial court balanced the *Eldridge* factors and made specific findings and conclusions regarding the minimum requirements of fundamental fairness." 105 N.C. App. at 654, 414 S.E.2d at 398. Our subsequent decision in *Murphy* to ignore the insufficiency of the record indicates that the trial court is not required to make the specific findings and conclusions asserted by respondent. Nevertheless, " 'because child-custody litigation must be concluded

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

as rapidly as is consistent with fairness,' " in the absence of specific findings, we may determine *sua sponte* whether the trial court denied respondent due process of law when ruling on respondent's request to be in the courtroom during John's examination. *Id.* (quoting *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 32, 68 L. Ed. 2d 640, 653, *reh'g denied*, 453 U.S. 927, 69 L. Ed. 2d 1023 (1981)).

In the instant case, our review of the *Eldridge* factors leads us to conclude that the trial court did not err by excluding respondent from the courtroom. The first *Eldridge* factor requires us to consider the private interests involved in the decision to exclude the respondent from the courtroom. We recognize that " '[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one[,]' " *Santosky*, 455 U.S. at 758-59, 71 L. Ed. 2d at 610 (citation omitted), and, in light of this interest, we conclude that the first *Eldridge* factor weighs in favor of respondent.

In considering the third *Eldridge* factor—the petitioner's interest in excluding the respondent from the courtroom—we note that the right to be present, to testify, and to confront witnesses at a termination hearing is subject to limitations, *Murphy*, 105 N.C. App. at 658, 414 S.E.2d at 400, including the State's interest "in ensuring a fair hearing and a correct decision and protecting the dignity of the courtroom." *In re Faircloth*, 153 N.C. App. 565, 574, 571 S.E.2d 65, 71 (2002). Thus, where "the excluded party's presence during testimony might intimidate the witness and influence his answers, due to that party's position of authority over the testifying witness, any right . . . to confront the witnesses is properly limited." *In re Barkley*, 61 N.C. App. 267, 270, 300 S.E.2d 713, 715 (1983) (rejecting the respondent's argument that she was denied her constitutional right to confrontation by being excluded from the courtroom while her child testified).

In the instant case, Azar, a licensed professional counselor who worked directly with John regarding his relationship with respondent, testified that John "is very influenced by" respondent, and that respondent "has a tendency to be very enmeshed with [John] when she's with him." Azar testified that respondent was "very manipulative[,]" and that she believed "that there were stories constructed that [John] was asked to corroborate and to justify to." Azar testified that she believed respondent had told John to lie to investigators, and that

he's faced with a real moral dilemma testifying in front of his mother. There are things that she has asked of him, and he has stated that he needs to tell the truth. And, yes, he cares about his

mother and cares about her feelings and hurting her and—and I believe that testifying in front of her to the truth would—would really impact—impact him in a very negative way.

The trial court was aware at the time of the termination hearing that respondent had been charged with kidnapping John and absconding to Oregon, and Azar testified that John was "reluctant about testifying" and "ha[d] requested . . . that he not testify in front of his mother . . . ." In light of the foregoing, we conclude that the third *Eldridge* factor weighs as equally in favor of petitioner as the first *Eldridge* factor weighs in favor of respondent. Therefore, our determination of whether respondent's due process rights were violated turns upon the second *Eldridge* factor: the risk of error created by the procedure used by the trial court.

The transcript of the termination hearing indicates that the trial court employed various procedures to allow respondent to view and hear John's testimony as well as communicate with her counsel. Respondent was placed in an adjacent room with a television monitor and had telephonic access to her attorneys. The trial court instructed respondent's guardian *ad litem* to "go in there with [respondent]" to "[m]ake sure she understands how to use the equipment[,]" and the equipment was tested prior to John's testimony. During his cross-examination, John was instructed that respondent was "in another room and can hear the conversation[,]" and respondent's counsel indicated that he was "conferring with" respondent during John's testimony. In light of the foregoing, we conclude that the risk of error from the procedure employed at trial was slight. Because the trial court preserved respondent's opportunity to cross-examine John through her court-appointed counsel, we also conclude that respondent suffered no prejudice as a result of her exclusion from the courtroom during John's testimony. *Barkley*, 61 N.C. App. at 269, 300 S.E.2d at 716. Therefore, in light of *Eldridge* and other relevant case law, we conclude that the trial court did not err by excluding respondent from the courtroom during John's testimony. Accordingly, we overrule this argument.

### X. *Termination of Parental Rights*

[11] Respondent next argues that the trial court erred by concluding that her parental rights should be terminated. Respondent asserts that the trial court did not properly conduct a disposition hearing prior to terminating her parental rights. We disagree.

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

Termination of parental rights involves a two-stage process. *In re Howell*, 161 N.C. App. 650, 656, 589 S.E.2d 157, 160 (2003). During the adjudication stage, the trial court examines the evidence and determines whether sufficient grounds exist under N.C. Gen. Stat. § 7B-1111 to warrant termination of parental rights. *Id.* The trial court's findings must be supported by clear, cogent, and convincing evidence. *Id.* at 656, 589 S.E.2d at 160-61. If the trial court determines that any one of the grounds for termination listed in § 7B-1111 exists, the trial court then proceeds to the disposition stage, where the trial court may terminate parental rights consistent with the best interests of the child. *Id.* at 656, 589 S.E.2d at 161. "Evidence heard or introduced throughout the adjudicatory stage, as well as any additional evidence, may be considered by the court during the dispositional stage." *In re Blackburn*, 142 N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001).

In the instant case, respondent contends that the trial court did not "afford [her] the opportunity to present any evidence as to disposition." However, the transcript reflects the following pertinent exchange at the adjudicatory stage during the parties' arguments regarding evidence presented:

RESPONDENT'S COUNSEL: Your Honor, am I correct in understanding we'll argue the best interest argument after disposition since we're just addressing the grounds at this point?

TRIAL COURT: At this point we're talking about the adjudication.

Following respondent's adjudication argument, the trial court announced that it "would find that there is clear and convincing evidence that the parental rights of [respondent] should be terminated." Following a recitation of its findings related to adjudication, the trial court stated that it would "proceed to the dispositional hearing at this time." When the trial court asked respondent's counsel whether he had anything further to offer, he stated that he would "ask the Court to consider at disposition all of the reports and exhibits submitted at the various review hearings by my client which are contained in the underlying file." Respondent's counsel then proceeded to argue that "we do not think it is in the best interest to terminate this child's relationship with his mother."

"There is no requirement that the adjudicatory and dispositional stages be conducted at two separate hearings." *In re Parker*, 90 N.C.

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

App. 423, 430, 368 S.E.2d 879, 884 (1988). Furthermore, because termination proceedings are held before a judge sitting without a jury, in the absence of an affirmative indication to the contrary, appellate courts presume that "the judge, having knowledge of the law, is able to consider the evidence in light of the applicable legal standard and to determine whether grounds for termination exist before proceeding to consider evidence relevant only to the dispositional stage." *In re White*, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38, *disc. review denied*, 318 N.C. 283, 347 S.E.2d 470 (1986). In the instant case, the trial court accepted evidence from both parties "for dispositional purposes" during the adjudication stage, and, as detailed above, the trial court conducted a disposition hearing following the adjudicatory stage. In light of the record in the instant case, we conclude that respondent was given ample opportunity to present evidence and provide argument regarding disposition. Therefore, we overrule this argument.

### XI.  Best Interests of the Minor Child

**[12]** Respondent further argues that the trial court erred by concluding that it was in John's best interests to terminate respondent's parental rights. Respondent contends that the trial court failed to make proper findings of fact regarding John's best interests. We disagree.

We review a trial court's determination regarding the best interests of the juvenile under an abuse of discretion standard. *In re Nolen*, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995). In the instant case, respondent does not argue that the trial court abused its discretion in making this determination or that the trial court's findings regarding John's best interests are unsupported by competent evidence. Instead, respondent contends that the trial court erred in its determination because it did not enter oral findings regarding John's best interests following the disposition portion of the termination hearing. We cannot agree.

N.C. Gen. Stat. § 7B-1110(a) (2003) provides that, should the trial court determine that conditions authorizing termination exist and that it is in the best interests of the juvenile to do so, the trial court should enter a written, signed order terminating the respondent's parental rights. The statute does not require that the trial court issue oral findings with regard to its determination. In *In re Brim*, 139 N.C. App. 733, 738, 535 S.E.2d 367, 370 (2000), this Court recognized that, under former N.C. Gen. Stat. § 7A-651 (now N.C. Gen. Stat. § 7B-905), the trial court was not required to announce its findings of fact and

**IN RE J.B.**

[172 N.C. App. 1 (2005)]

conclusions of law in open court. Instead, the terms of disposition must only have been stated with "particularity" in open court. *Id.* (citing *In re Bullabough*, 89 N.C. App. 171, 179, 365 S.E.2d 642, 646 (1988)). Referring to former N.C. Gen. Stat. § 7A-289.31 (now N.C. Gen. Stat. § 7B-1110), we noted that "there is no requirement . . . that the court orally state 'with particularity' the exact terms of the disposition." *Brim*, 139 N.C. App. at 739, 535 S.E.2d at 370.

In the instant case, following the close of the proceedings, the trial court stated from the bench that it was terminating respondent's parental rights. The trial court then ordered that John remain in petitioner's custody, and it scheduled a post-termination of parental rights review hearing. In light of the foregoing, we conclude that the trial court satisfied its statutory duties related to disposition. Furthermore, we note that in its written order terminating respondent's parental rights, the trial court made several detailed findings regarding its conclusion that termination of respondent's parental rights is in John's best interests. The trial court's written order conforms with its oral determination at trial, and its findings of fact are based on competent evidence contained within the record. Therefore, we conclude that the trial court did not err by failing to make specific oral findings regarding disposition, and, accordingly, we overrule respondent's argument.

### XII. Drafting of Order Terminating Parental Rights

**[13]** Respondent next argues that the trial court erred in drafting the order terminating her parental rights. Respondent asserts that the trial court was prohibited from directing petitioner's counsel to draft an order containing written findings of fact and conclusions of law on its behalf. We disagree.

"This Court has previously held that pursuant to the provisions of N.C. Gen. Stat. § 1A-1, Rule 58 of the Rules of Civil Procedure, after 'entry' of judgment in open court, a trial court retains the authority to approve the judgment and direct its prompt preparation and filing." *Hightower v. Hightower*, 85 N.C. App. 333, 337, 354 S.E.2d 743, 745 (citing *Condie v. Condie*, 51 N.C. App. 522, 277 S.E.2d 122 (1981)), *cert. denied*, 320 N.C. 792, 361 S.E.2d 76 (1987). N.C. Gen. Stat. § 1A-1, Rule 58 (2003) provides that a judgment is entered when it is reduced to writing, signed by the trial court, and filed with the clerk of court. Nothing in the statute or common practice precludes the trial court from directing the prevailing party to draft an order on its behalf. Instead, "[s]imilar procedures are routine in civil cases[.]"

*Farris v. Burke County Bd. of Educ.*, 355 N.C. 225, 242, 559 S.E.2d 774, 784 (2002) (citing N.C. Gen. Stat. § 1A-1, Rule 58 and *Stachlowski v. Stach*, 328 N.C. 276, 401 S.E.2d 638 (1991)); *see also In re Hayes*, 106 N.C. App. 652, 656, 418 S.E.2d 304, 306 (1992) (distinguishing between the "rendering" and "entry" of judgment and noting that judgment is not automatically entered when announced in open court where there is "[a]n instruction by the court that the prevailing party's attorney is to draft the order[.]"). In the instant case, the trial court clearly indicated that it had determined that sufficient grounds exist to terminate respondent's parental rights pursuant to each of the statutory grounds alleged in the petition. The trial court directed petitioner to draft an order terminating respondent's parental rights, and it designated "*specific findings of fact*" it wanted included in the order. Following presentation of evidence and argument regarding John's best interests, the trial court concluded that "[u]nder the statute I will terminate the parental rights of [respondent]." In light of the foregoing, we conclude that the trial court did not err in directing petitioner to draft the termination order on its behalf. Accordingly, we overrule this argument.

### XIII. Entry of Order Terminating Parental Rights

**[14]** Respondent's final argument is that the trial court erred in entering the order terminating her parental rights. Respondent asserts that the trial court's order must be vacated because it was not filed within thirty days of the completion of the termination hearing. We disagree.

N.C. Gen. Stat. § 7B-1110(a) provides that "[a]ny order [terminating parental rights] shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." In the instant case, the termination hearing was completed on 23 July 2003 and the order was not filed until 27 October 2003. Thus, the trial court filed the order terminating respondent's parental rights outside of the thirty-day mandate of the statute. This Court has recently found prejudice and reversed termination orders where the orders were entered approximately six to seven months after the conclusion of the termination hearings. *See In re T.L.T.*, 170 N.C. App. 430, 612 S.E.2d 436 (2005); *In re L.E.B.*, 169 N.C. App. 375, 610 S.E.2d 424 (2005). However, after reviewing the record in the instant case, we conclude that respondent has failed to sufficiently demonstrate such prejudice regarding the delay in the entry of the termination order. Accordingly, we overrule respondent's final argument.

## XIV. Conclusion

In light of the foregoing conclusions, we affirm the order terminating respondent's parental rights.

Affirmed.

Judges HUDSON and STEELMAN concur.