IN RE R.L. & N.M.Y.

[186 N.C. App. 529 (2007)]

IN THE MATTER OF: R.L. AND N.M.Y., MINOR CHILDREN

No. COA06-1616

(Filed 6 November 2007)

**1. Child Abuse and Neglect— review of reunification efforts—hearings continued—abuse of discretion**

The trial court abused its discretion by continuing hearings for a dependent juvenile multiple times in a manner inconsistent with N.C.G.S. § 7B-803. The trial court's violations of the time limits set out in N.C.G.S. §§ 7B-801(c) and 7B-906(a) were not justified.

**2. Child Abuse and Neglect— adjudicatory orders—statutory timelines**

The trial court violated the statutory time limit found in N.C.G.S. § 7B-807(b) concerning adjudicatory orders in juvenile proceedings. The reason for the delay is not clear from the record.

**3. Child Abuse and Neglect— adjudication orders—hearings to explain delays—effective date of statute**

The statute concerning subsequent hearings to explain delays in adjudication orders in juvenile proceedings, N.C.G.S. § 7B-807(b), became effective on 1 October 2005 and does not apply to petitions filed before that date.

**4. Child Abuse and Neglect— review hearing—delay prejudicial**

A mother sufficiently demonstrated that she was prejudiced by the court's delay in conducting her review hearing after her children were adjudicated neglected and removed from her custody. It was unfair for the mother to receive feedback on her progress seven months after she was entitled to it.

**5. Child Abuse and Neglect— adjudicatory hearings—delays—prejudice**

The fathers of children alleged to be neglected and dependent suffered prejudice as a result of the trial court's failure to conduct an adjudicatory hearing within the time frame prescribed by N.C.G.S. § 7B-801(c). Following the statutory timeliness would have allowed time to seek and comply with reunification orders from the trial court.

IN RE R.L. & N.M.Y.

[186 N.C. App. 529 (2007)]

Appeal by Respondents from orders entered 28 April 2006 and 19 September 2006 by Judge Daniel F. Finch in District Court, Vance County. Heard in the Court of Appeals 22 August 2007.

*Duncan B. McCormick for Respondent-Mother; Peter Wood for Respondent-Father R.L.; and Robin E. Strickland for Respondent-Father D.D.*

*Law Offices of Carolyn J. Yancey, P.A., by Carolyn J. Yancey, for Petitioner-Appellee Vance County Department of Social Services.*

McGEE, Judge.

R.L. and N.M.Y. are the minor children of Respondent-Mother. Respondent-Father R.L. is the father of the minor child R.L. and Respondent-Father D.D. is the father of the minor child N.M.Y. The Vance County Department of Social Services (DSS) filed juvenile petitions on 23 August 2004 alleging that R.L. and N.M.Y., both three years old at the time, were neglected and dependent. The trial court adjudicated both R.L. and N.M.Y. to be neglected as to Respondent-Mother on 9 March 2005. The trial court conducted a dispositional hearing on 4 May 2005 and placed R.L. and N.M.Y. in the legal and physical custody of DSS. In order to regain custody of her children, the trial court ordered Respondent-Mother to meet a number of goals, including, *inter alia*, maintaining adequate housing and food, completing mental health and anger management evaluations, submitting to random drug screenings, and attending parenting classes. The trial court was to review Respondent-Mother's progress three months later, on 3 August 2005.

Respondent-Father R.L. was served with the juvenile petition on 23 March 2005. The trial court originally scheduled R.L.'s adjudication hearing for 4 May 2005, but continued the hearing twice because of a crowded docket and once because Respondent-Father R.L. was unable to attend. Respondent-Father D.D. was served with the juvenile petition on 3 August 2005 after a paternity test determined that he was N.M.Y.'s father. The trial court then continued the entire case, including Respondent-Mother's review hearing, eleven times between 3 August 2005 and 22 February 2006. Of the eleven continuances, five were due to a crowded docket, and six were due to the absence of one or more parties and/or their attorneys.

The trial court finally held R.L.'s and N.M.Y.'s adjudication hearings on 22 February 2006, and adjudicated both R.L. and N.M.Y.

dependent as to their respective fathers. The trial court then held a disposition and permanency planning hearing on 6 March 2006. The trial court found all Respondents' progress towards reunification with R.L. and N.M.Y. to be unsatisfactory. The trial court changed the minors' permanent plans from reunification to adoption and directed DSS to initiate termination of parental rights proceedings as to all three Respondents. The trial court reduced to writing, signed, and entered the adjudication and disposition orders seven weeks later on 28 April 2006, except for R.L.'s adjudication order. The trial court did not enter that order until 19 September 2006, nearly seven months after the adjudicatory hearing. This delay occurred despite efforts by counsel to have the trial court issue the order in a timely fashion. As a result, Respondents twice sought, and were granted, extensions of time to prepare the proposed record on appeal.

Respondent-Mother, Respondent-Father R.L., and Respondent-Father D.D. each appeal the final orders of the trial court. We reverse as to all Respondents.

I.

Two of the stated purposes of our State's juvenile code are "provid[ing] procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents" and "preventing the unnecessary or inappropriate separation of juveniles from their parents." N.C. Gen. Stat. § 7B-100(1), (4) (2005). One way in which the General Assembly has sought to achieve these objectives is by using statutory deadlines to ensure that the time between petition, adjudication, and disposition is kept brief. This ensures that all the parties involved—including the child, the biological parents, and the foster or adoptive parents—are guaranteed timely resolution of sensitive and critical family status questions.

Under N.C. Gen. Stat. § 7B-801(c) (2005), after DSS files a petition in an abuse, neglect, or dependency action, the trial court must hold an adjudicatory hearing within sixty days. The trial court may only avoid this time limit if it determines that a continuance of the case is proper under N.C. Gen. Stat. § 7B-803 (2005). After holding the adjudicatory hearing, the trial court must sign and enter its written adjudication order within thirty days. N.C. Gen. Stat. § 7B-807(b) (2005). If the trial court does not meet this deadline, it must conduct a hearing at the next session of juvenile court "to determine and explain the reason for the delay and to obtain any needed clarification as to the

contents of the order." *Id.* The trial court then has an additional ten days to enter the adjudication order. *Id.*

If a minor child is adjudicated abused, neglected, or dependent, the trial court will then hold a dispositional hearing. If the best interests of the minor child so require, the trial court has broad discretion to order the child's parent or parents to follow a treatment plan "directed toward remediating or remedying behaviors or conditions that led to or contributed to the juvenile's adjudication or to the [trial] court's decision to remove custody of the juvenile from the parent." N.C. Gen. Stat. § 7B-904(c) (2005). If the trial court removes the juvenile from the custody of a parent, it must review the custody order within ninety days of the dispositional hearing, and again within six months of the first review hearing. N.C. Gen. Stat. § 7B-906(a) (2005). Within one year of the initial order removing custody, the trial court must hold a permanency planning hearing "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a) (2005).

## II.

Respondents each allege that the trial court violated multiple statutory time limits throughout the litigation below. We consider these allegations in turn.

## A.

[1] With regard to Respondent-Mother, DSS filed the juvenile petitions on 23 August 2004. The trial court held R.L.'s and N.M.Y.'s adjudicatory hearings on 9 March 2005, and then held their dispositional hearings on 4 May 2005. Pursuant to N.C.G.S. § 7B-906(a), the trial court was required to conduct a review hearing within ninety days after the dispositional hearing, and again within the following six months, to monitor Respondent-Mother's progress with her reunification plan. The trial court originally scheduled Respondent-Mother's review hearing for 3 August 2005, within the ninety-day window. However, due to the multiple continuances of the case, the trial court held the first review hearing on 6 March 2006, more than ten months after the dispositional hearing and seven months after the statutory deadline.

With regard to Respondent-Father R.L. and Respondent-Father D.D., DSS filed the juvenile petitions on 23 August 2004. Pursuant to N.C.G.S. § 7B-801(c), the trial court was required to hold R.L.'s and N.M.Y.'s adjudicatory hearings within sixty days unless it continued

the case in accordance with N.C.G.S. § 7B-803. Respondent-father R.L. was served with the juvenile petition on 23 March 2005, seven months after DSS filed the petition. Due to the multiple continuances of the case, the trial court ultimately held R.L.'s adjudicatory hearing on 22 February 2006, eighteen months after DSS filed the petition and sixteen months after the statutory deadline for the adjudicatory hearing. Even if the sixty-day limit began to run from the date Respondent-Father R.L. was served with the petition, the trial court still held R.L.'s adjudicatory hearing nine months late.

Respondent-Father D.D. was added to the petition and was served on 3 August 2005, nearly one year after DSS filed the petition. Due to the multiple continuances of the case, the trial court ultimately held N.M.Y.'s adjudicatory hearing on 22 February 2006, eighteen months after DSS filed the petition and sixteen months after the statutory deadline for the adjudicatory hearing. Even if the sixty-day limit began to run from the date Respondent-Father D.D. was added to the petition and was served, the trial court still held N.M.Y.'s adjudicatory hearing over four months late.

It is plain that the trial court did not meet the time limits set out in N.C.G.S. § 7B-801(c) and N.C.G.S. § 7B-906(a). The question, then, is whether the multiple continuances of the case were proper, thus excusing the delay. We review a trial court's decision to continue a case on an abuse of discretion standard. *In re J.B.*, 172 N.C. App. 1, 10, 616 S.E.2d 264, 270 (2005). Under N.C.G.S. § 7B-803, a trial court may continue a juvenile hearing if a continuance

> is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.

A review of the record indicates that the trial court continued the case fourteen times between 20 April 2005 and 22 February 2006, for the following reasons:

(1) 20 April 2005, due to lack of time.

(2) 18 May 2005, due to employment-related absence of Respondent-Father R.L.

(3) 6 July 2005, due to lack of time.

(4) 3 August 2005, due to lack of time.

(5) 17 August 2005, due to the absence of Respondent-Mother's attorney.

(6) 7 September 2005, due to the absence of attorneys for Respondent-Mother and Respondent-Father R.L.

(7) 21 September 2005, due to lack of time.

(8) 5 October 2005, due to the absence of Respondent-Mother and Respondent-Father R.L.

(9) 9 November 2005, due to medical-related absence of Respondent-Mother's attorney.

(10) 23 November 2005, due to the absence of Respondent-Father D.D.'s attorney.

(11) 7 December 2005, due to lack of time.

(12) 21 December 2005, due to Respondent-Mother's absence due to a death in her family.

(13) 18 January 2006, due to lack of time.

(14) 8 February 2006, due to lack of time.

In total, the trial court continued the case seven times due to a crowded docket, three times due to the absence of Respondents, and four times due to the absence of Respondents' attorneys.

The trial court ordered none of the fourteen continuances for the purpose of "receiv[ing] additional evidence, reports, or assessments that the trial court ha[d] requested, or other information needed in the best interests of the juvenile [or] to allow for a reasonable time for the parties to conduct expeditious discovery." N.C.G.S. § 7B-803. Thus, for each continuance to be proper, the trial court must have encountered "extraordinary circumstances," such that a continuance was "necessary for the proper administration of justice or in the best interests of the juvenile[s]." Id.

Under this test, we cannot say that the trial court abused its discretion when it continued the case on 9 November 2005 due to an attorney's medical needs and again on 21 December 2005 due to a death in Respondent-Mother's family. Both of these situations might be considered "extraordinary circumstances" justifying a continu-

ance. With regard to the five other continuances the trial court ordered due to the absence of either a Respondent or a Respondent's attorney, it is difficult to determine whether extraordinary circumstances might have existed, as the record does not indicate the reasons for these absences. However, we need not decide this issue in light of our analysis of the remaining seven continuances.

The continuance standard in N.C.G.S. § 7B-803 stands in contrast to the general continuance requirement found in the North Carolina Rules of Civil Procedure. Under N.C.R. Civ. P. 40(b), a trial court may grant a continuance "only for good cause shown and upon such terms and conditions as justice may require." While a systemic problem of scheduling too many cases on a given day might constitute "good cause" for continuing a case under Rule 40(b), it is not an "extraordinary circumstance" warranting a continuance in a juvenile case under N.C.G.S. § 7B-803. Given the overall scheme of the juvenile code, which consistently requires speedy resolution of juvenile cases, it is clear that the General Assembly did not contemplate a crowded docket as a circumstance sufficient to warrant delay. Nor does the absence of a respondent, or of a respondent's attorney at a prior hearing, justify a non-emergent continuance of a subsequent hearing. The trial court abused its discretion by continuing this case multiple times in a manner inconsistent with N.C.G.S. § 7B-803. As such, the trial court's violations of the statutory time limits set out in N.C.G.S. § 7B-801(c) and N.C.G.S. § 7B-906(a) were not justified.

B.

[2] Respondent-Father R.L. and Respondent-Father D.D. also allege violations of the statutory time limit found in N.C.G.S. § 7B-807(b), which requires that the adjudicatory order "be reduced to writing, signed, and entered no later than 30 days following the completion of the [adjudicatory] hearing." *Id.* The trial court held R.L.'s and N.M.Y.'s adjudicatory hearings on 22 February 2006, and the trial court rendered adjudications with respect to both R.L. and N.M.Y. at those hearings. The trial court filed the adjudication order as to N.M.Y. on 28 April 2006, more than two months after the adjudicatory hearing and over a month past the statutory deadline. The trial court filed the adjudication order as to R.L. on 19 September 2006, almost seven months after the adjudicatory hearing and six months past the statutory deadline.

The reason for the trial court's delay in entering the adjudication order is not entirely clear from the record. It appears that the trial

court was waiting for DSS to prepare the order for the trial court. In late July 2006, counsel for Respondent-Father R.L. contacted DSS by telephone and by written letter to inquire as to the status of the order. No response from DSS appears in the record, and the trial court did not enter the order until seven weeks later. The trial court clearly violated the statutory time limit set out in N.C.G.S. § 7B-807(b).

### C.

**[3]** Respondent-Father R.L. also alleges a further violation of N.C.G.S. § 7B-807(b), which states that if the trial court does not enter the adjudicatory order within thirty days of the adjudicatory hearing, it must hold a subsequent hearing to explain and remedy the delay. *Id.* This portion of N.C.G.S. § 7B-807(b) became effective on 1 October 2005 and does not apply to petitions filed before that date. 2005 N.C. Sess. Laws ch. 398, §§ 3, 19. Respondent-Father R.L.'s argument is therefore without merit.

### III.

Respondents next allege that they have been prejudiced by the trial court's failure to adhere to the various statutory deadlines applying to these juvenile proceedings. We consider each Respondent's allegations in turn.

### A.

**[4]** Violation of one of the statutory deadlines discussed above is reversible error. However, we have consistently held that violations of "time limitations in the juvenile code . . . do not require reversal of orders in the absence of a showing by the appellant of prejudice resulting from the time delay." *In re C.L.C.*, 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005), *aff'd, disc. review improvidently allowed,* 360 N.C. 475, 628 S.E.2d 760 (2006). Indeed, "the complaining party must appropriately articulate the prejudice arising from the delay in order to justify reversal." *In re S.N.H.*, 177 N.C. App. 82, 86, 627 S.E.2d 510, 513 (2006).

Our recent cases make clear, however, that the length of the delay and the magnitude of deviation from the statutory mandate directly affect the appellant's burden of showing prejudice. *See, e.g., In re C.J.B.*, 171 N.C. App. 132, 135, 614 S.E.2d 368, 370 (2005) ("A review of our recent cases on point exemplifies that the need to show prejudice in order to warrant reversal is highest the fewer number of days the delay exists. And the longer the delay in entry of the order beyond the . . . deadline, the more likely prejudice will be readily apparent.")

(internal citation omitted); *In re T.W.*, 173 N.C. App. 153, 161, 617 S.E.2d 702, 707 (2005) ("[T]he need to show prejudice diminishes as the delay between [a termination of parental rights hearing] and the date of entry of the order terminating parental rights increases. At more than ten times the permissible time for entry of the order, the need to show prejudice . . . is necessarily diminished exponentially."). However, egregious delay alone will not give rise to a claim of prejudice per se. The appellant must still articulate some specific prejudice that he or she has suffered. *See, e.g., In re S.N.H.*, 177 N.C. App. at 86, 627 S.E.2d at 513 ("a trial court's violation of statutory time limits in a juvenile case is not reversible error *per se*"); *In re C.J.B.*, 171 N.C. App. at 134, 614 S.E.2d at 369 ("Respondent argues that non-compliance with the thirty-day statute is prejudice *per se*, thus requiring a new hearing. Our Court has never held that entry of the written order outside the thirty-day time limitations . . . was reversible error absent a showing of prejudice.").

Our precedent in this area is based in large part on cases involving violations of statutory time limits in actions where DSS seeks to terminate parental rights. *See* N.C. Gen. Stat. § 7B-1109(a) (2005) (establishing a ninety-day limit between termination petition and hearing); N.C. Gen. Stat. § 7B-1109(e) (2005) (establishing a thirty-day limit between termination hearing and entry of adjudicatory order). And we recently noted an important distinction between cases involving termination of parental rights and cases involving adjudication of a juvenile as abused, neglected, or dependent. While the former type of case decides the status of parents, the latter type of case decides only the status of juveniles. Thus, in juvenile adjudications "[w]here the parental status is not at issue, it is much more difficult for [parents] to show how the delay prejudiced the parties." *In re B.M.*, 183 N.C. App. 84, 87, 643 S.E.2d 644, 646 (2007).

With these principles in mind, we turn to Respondents' allegations of prejudice.

B.

As an initial matter, we note that our prejudice inquiry is limited by the fact that DSS has only filed one appellee brief in this case, in response to Respondent-Father D.D. DSS did not file briefs in response to either Respondent-Mother or Respondent-Father R.L. The reason for DSS's lack of response is not apparent.

Respondent-Mother alleges that she suffered prejudice due to the trial court's failure to conduct post-disposition review hearings sub-

ject to the statutory guidelines in N.C.G.S. § 7B-906(a). At Respondent-Mother's dispositional hearing on 4 May 2005, the trial court ordered Respondent-Mother to complete a number of set goals in order to achieve reunification with R.L. and N.M.Y. Those goals included: (1) maintaining appropriate housing; (2) maintaining adequate food in the home; (3) keeping the home free of drugs and alcohol; (4) completing a mental health evaluation; (5) completing an anger management evaluation; (6) submitting to random drug screenings; (7) attending parenting classes; (8) maintaining contact with DSS and attending all scheduled appointments with DSS; and (9) visiting R.L. and N.M.Y. at a set time. The trial court also apparently ordered Respondent-Mother to keep her own mother (the grandmother of R.L. and N.M.Y.) away from the house due to concerns about the grandmother's alcohol use and promiscuity. However, no written order to this effect appears in the record. It is not clear whether the trial court ordered that the grandmother never be allowed in the house, or that she simply not be allowed in the house when R.L. and N.M.Y. were present.

The trial court held Respondent-Mother's permanency planning hearing, which also served as Respondent-Mother's first review hearing, on 6 March 2006, seven months after the statutory deadline. Respondent-Mother's DSS caseworker testified at that hearing. The caseworker testified that Respondent-Mother had been cooperative and had completed or was making progress on many, if not all, of the written reunification goals. There apparently had been some delay during a period when Respondent-Mother had been ill and had undergone surgery, but Respondent-Mother had made progress since that time. The caseworker's main concern was that Respondent-Mother had not provided any proof of the grandmother's living arrangements.

The trial court concluded that "[Respondent-Mother], while having made some efforts, has failed to make reasonable and timely progress within the twelve months prior to this hearing." Regardless of whether the trial court's finding was supported by the evidence, it was unfair for Respondent-Mother to receive this feedback on her progress seven months after she was entitled to it. Had the trial court complied with the requirements of N.C.G.S. § 7B-906(a), it could have given Respondent-Mother additional directives at least once before the permanency planning hearing. In addition, Respondent-Mother could have explained the circumstances surrounding her illness and could have clarified the trial court's non-written orders regarding the grandmother.

IN RE R.L. & N.M.Y.

[186 N.C. App. 529 (2007)]

Although the case had not yet reached the termination-of-parental-rights phase, it had clearly progressed past the point where the only issue was adjudication of the status of R.L. and N.M.Y. The trial court gave Respondent-Mother certain duties and obligations, and her response would directly affect her own legal rights with regard to R.L. and N.M.Y. To demonstrate this, one need only recognize that on the same day as Respondent-Mother's first review hearing, the trial court conducted its final permanency planning hearing, changed the minors' permanent plans from reunification to adoption, and directed DSS to initiate termination proceedings. Respondent-Mother has sufficiently demonstrated that she was prejudiced by the trial court's delay in conducting her review hearing.

[5] Respondent-Father D.D. alleges that he suffered prejudice as a result of the trial court's failure to conduct N.M.Y.'s adjudicatory hearing within the time frame prescribed by N.C.G.S. § 7B-801(c). Unlike Respondent-Mother, who had ten months to comply with her disposition orders before the permanency planning hearing, the trial court held N.M.Y.'s disposition and permanency planning hearings on 6 March 2006, only two weeks after having adjudicated N.M.Y. dependent as to Respondent-Father D.D. Respondent-Father D.D. never received any written orders from the trial court regarding a reunification plan. Yet, the trial court concluded at the disposition and permanency planning hearing that Respondent-Father D.D. "had ample time to show reasonable progress or completion of the previously ordered reunification services," and "failed to make any progress toward changing the conditions which led to the juvenile's removal." Had the trial court held N.M.Y.'s adjudicatory hearing within sixty days of the filing of the petition, or even within sixty days of Respondent-Father D.D. having being added to the petition, Respondent-Father D.D. would have had months before the permanency planning hearing to seek and comply with reunification orders from the trial court.

As with Respondent-Mother, Respondent-Father D.D.'s stake in the case had clearly progressed past the point where the only issue was adjudication of N.M.Y.'s status. Only two weeks after the months-late adjudication hearing, the trial court changed N.M.Y.'s permanent plan from reunification to adoption, and directed DSS to initiate termination proceedings. Further, Respondent-Father D.D.'s legal right to appeal the trial court's final orders was adversely affected by the trial court's seven-month delay in entering the adjudicatory order with regard to R.L., in violation of N.C.G.S. § 7B-807(b). *See, e.g., In*

re *T.L.T.*, 170 N.C. App. 430, 432, 612 S.E.2d 436, 438 (2005) (finding prejudice and reversing termination order where trial court entered order seven months after termination hearing). Even though Respondent-Father D.D. is not R.L.'s father, his appeal could not move forward until R.L.'s adjudicatory order was entered, such that the proposed record on appeal could be established and agreed upon by the parties. Due to the delay, Respondents sought and were granted two extensions of time to file the proposed record, one by the trial court on 10 August 2006, and one by this Court on 20 September 2006. Given the trial court's egregious violations of the statutory deadlines, Respondent-Father D.D. has sufficiently demonstrated that he was prejudiced by the resulting delays.

Respondent-Father R.L. alleges that he suffered prejudice as a result of the trial court's failure to conduct R.L.'s adjudicatory hearing within the time frame prescribed by N.C.G.S. § 7B-801(c), and also as a result of the trial court's failure to enter the adjudicatory order within the time frame prescribed by N.C.G.S. § 7B-807(b). Respondent-Father R.L. first contends that the delay between the filing of the petition and R.L.'s adjudicatory hearing was so excessive that it was prejudicial per se. As noted above, this Court has previously rejected the notion that violations of statutory time limits in juvenile cases, no matter how egregious, can be prejudicial per se. *See In re S.N.H.*, 177 N.C. App. at 86, 627 S.E.2d at 513; *In re C.J.B.*, 171 N.C. App. at 134, 614 S.E.2d at 369.

However, Respondent-Father R.L. does elaborate somewhat on the specific prejudice he allegedly suffered. He claims "[e]verybody was denied permanence. The appeal was put on hold. The time to file the proposed record on appeal was extended twice due to the delay." These allegations are admittedly less specific than those alleged by Respondent-Mother and Respondent-Father D.D. However, we previously have been willing to closely examine even a vague prejudice claim where a trial court's delay was egregious. In *In re C.J.B.*, for example, the respondent similarly argued that he was prejudiced by the trial court's delay in entering its termination order because "the appellate process was put on hold, [and] any sense of closure . . . was out of reach." *In re C.J.B.*, 171 N.C. App. at 135, 614 S.E.2d at 370. We concluded that "[a]dmittedly, the prejudice argued by [the] respondent in this case is generic and susceptible to challenge, but in light of a five-month delay, little more than common sense is necessary in order to perceive aspects of prejudice to all parties involved." *Id.*

IN RE R.L. & N.M.Y.

[186 N.C. App. 529 (2007)]

So too, in this case, the prejudice suffered by Respondent-Father R.L. is clear. As with N.M.Y., the time between the adjudication and permanency planning hearings in R.L.'s case was two weeks. Respondent-Father R.L. was never under reunification orders before or during that time. Yet, the trial court concluded at the disposition and permanency planning hearing that Respondent-Father R.L. "had sufficient time to show reasonable progress or completion of the previously ordered reunification services" but had made no "reasonable and timely progress toward correcting conditions which led to the juveniles' removal." Had the trial court held R.L.'s adjudicatory hearing in a timely fashion, Respondent-Father R.L. would have had close to a year before the permanency planning hearing to seek and comply with reunification orders from the trial court. Further, as with Respondent-Father D.D., Respondent-Father R.L. was adversely affected by the trial court's seven-month delay in entering the adjudication order with respect to R.L. Respondent-Father R.L.'s own right to appeal the trial court's orders was unnecessarily put on hold while he was forced to seek time extensions from both the trial court and this Court. Meanwhile, the delay prolonged R.L.'s placement in temporary foster care; to the detriment of Respondent-Father R.L., his child, and the child's foster parents. *See In re O.S.W.*, 175 N.C. App. 414, 623 S.E.2d 349 (2006). In *In re O.S.W.*, the trial court delayed six months in entering a termination order after the termination hearing. The respondent parent argued on appeal that "he was prejudiced in that his relationship with his son remained severed and he was unable to give notice of his appeal." *Id.* at 415, 623 S.E.2d at 350. The respondent also claimed that "the delay has adversely affected the child and the foster parents in that the child's placement is not permanent and the foster parents have been precluded from adopting the juvenile." *Id.* at 415-16, 623 S.E.2d at 350-51. We held that the trial court's delay "was prejudicial to [the] respondent, the minor child, and the foster parents." *Id.* at 416, 623 S.E.2d at 351.

Given the trial court's egregious violations of the statutory deadlines, Respondent-Father R.L. has sufficiently demonstrated that he was prejudiced by the trial court's numerous statutory violations.

IV.

In light of the foregoing, we do not reach Respondents' remaining assignments of error. We reverse: (a) the trial court's permanency planning order with respect to Respondent-Mother; (b) the trial court's order adjudicating R.L. dependent with respect to

Respondent-Father R.L.; and (c) the trial court's order adjudicating N.M.Y. dependent with respect to Respondent-Father D.D. We remand for new trials.

We acknowledge that the ultimate result of our holding today is less permanence for Respondents, and for R.L. and N.M.Y. However, as this Court has recognized:

[P]rejudice, if clearly shown by a party, [is not] something to ignore solely because the remedy of reversal further exacerbates the delay. If we were to operate as such, we would either reduce the General Assembly's time lines to a nullity; or worse, escalate violations of them beyond the reason for their existence: the best interests of the child[ren].

In re A.L.G., 173 N.C. App. 551, 554, 619 S.E.2d 561, 564 (2005) (internal citation omitted), disc. review improvidently allowed, 360 N.C. 476, 628 S.E.2d 760 (2006).

Reversed and remanded.

Judges STEPHENS and SMITH concur.