IN THE MATTER OF: J.M.
No. COA08-34
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
Jennifer S. O'Connor for Johnston County Department of Social Services petitioner-appellee.
Pamela Newell Williams for guardian ad litem.
Katherine Freeman for father-appellee.
Patricia Kay Gibbons for respondent-appellant grandmother.
Robin E. Strickland for respondent-appellant grandfather.
BRYANT, Judge.
Respondents, the maternal grandparents of J.M., appeal from an order adjudicating J.M. a neglected and dependent juvenile. We affirm.
On 26 January 2007, the Johnston County Department of Social Services ("DSS") filed a petition alleging that J.M. was a neglected and dependent juvenile. DSS claimed that respondents were not providing J.M. with proper remedial care. Moreover, DSSasserted that J.M. lived in an environment injurious to his welfare. Specifically, DSS alleged:
On January 9, 2007, [DSS] found the family "In Need of Services" as [respondent-grandmother], on December 20, 2006, made statements to include that [J.M.] drives her "crazy," that if she has to keep dealing with him, that she will kill him, that she needs to get [J.M.] out of her sight and that she needs to get away from [J.M.] before anything "drastic happens." It was found, as well, that [respondent-grandmother] is diagnosed with Mood Disorder, was not taking her medications as prescribed and, reportedly, becomes depressed during the Christmas Holidays. . . .
DSS further stated that on 26 January 2007, it received information that respondents had violated a safety assessment in which respondents had agreed that respondent-grandmother would not be left alone with J.M.; respondent-grandmother confirmed the allegation. DSS stated that it did not believe that respondent-grandmother had adequately addressed her mental health issues, that respondent-grandmother's therapist did not feel that respondent-grandmother could parent at that time, and that respondent-grandmother "continued to be observed displaying roughness and harshness towards [J.M.] both verbally and physically." In addition to the above allegations, DSS recounted respondents' prior involvement with DSS dating to at least September 2003. A non-secure custody order was entered and J.M. was removed from respondents' home.
Adjudicatory hearings were held on 28 February 2007, 14 March 2007, 4 April 2007, 16 May 2007, 27 June 2007, 11 July 2007, 18 July 2007, and 25 July 2007. Dispositional hearings were held on1 August 2007, 15 August 2007, and 22 August 2007. On 29 August 2007, nunc pro tunc 25 July 2007, the trial court entered the written adjudicatory order. The trial court found that J.M. was a neglected and dependent juvenile. On 26 September 2007, the trial court entered a dispositional order. The trial court awarded custody to J.M.'s paternal grandmother and relieved DSS of reunification efforts. Respondents appeal.

I.
Respondent-grandmother first argues that the trial court committed reversible error by continuing non-secure custody. Respondent-grandmother asserts that there was no reasonable factual basis to believe the matters alleged in the petition were true and none of the criteria expressed in N.C. Gen. Stat. § 7B-503(a) were satisfied. However, we decline to review respondent-grandmother's argument because a non-secure custody order is not an appealable order. See N.C. Gen. Stat. § 7B-1001(a)(4) (2007)(an appeal may be taken from a trial court's final order in a juvenile matter, "other than a nonsecure custody order," which changes the legal custody of the juvenile). Furthermore, even assuming arguendo that respondent-grandmother had a right to appeal, we note that she consented to the entry of the continuing non-secure custody orders. See N.C. R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely . . . objection or motion, stating the specific grounds for the ruling the party desired the court to make . . ."). Accordingly, respondent-grandmother's assignment of error is dismissed.

II.
Respondents next argue that the trial court erred by failing to conduct the adjudicatory hearing within sixty days from the filing of the petition as required by N.C. Gen. Stat. § 7B-801(c)(2007). Respondent-grandmother contends that the trial court's finding of fact number 1, that the hearing was not concluded within sixty days due to "extraordinary circumstances[,]" was in error.
Pursuant to N.C. Gen. Stat. § 7B-801(c), "[t]he adjudicatory hearing shall be held . . . no later than 60 days from the filing of the petition unless the judge pursuant to G.S. 7B-803 orders that it be held at a later time." Id. Here, the petition was filed on 26 January 2007. The first hearing was held on 28 February 2007, within the sixty day mandate. However, the adjudicatory hearing was not completed until 25 July 2007. "The question, then, is whether the multiple continuances of the case were proper, thus excusing the delay." In re R.L., ___ N.C. App. ___, ___, 652 S.E.2d 327, 331 (2007). "We review a trial court's decision to continue a case on an abuse of discretion standard." Id. (citing In re J.B., 172 N.C. App. 1, 10, 616 S.E.2d 264, 270 (2005)).
In accordance with N.C. Gen. Stat. § 7B-803(2007),
[t]he court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonabletime for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.
Id. Here, several of the hearings were continued because of the voluminous amount of testimony presented. On 14 March 2007, 16 May 2007, and 11 July 2007, the hearings commenced early in the day and recessed close to 5 p.m. On 27 June 2007, the hearing commenced shortly before lunch and recessed at the end of the day. The trial court also noted that some of the delay between hearings was due to the "court's own unavailability due to scheduled time away from Court." Other continuances were granted due to a family medical emergency involving the attorney for J.M.'s father. See R.L.,___ N.C. App. at ___, 652 S.E.2d at 332 (attorney's medical needs considered "extraordinary circumstances").
We further note that DSS attempted to expedite the matter by moving the trial court for a special setting. However, respondent-grandfather objected, and the trial court denied the motion. Thus, respondent-grandfather can demonstrate no prejudice since he was at least partially responsible for the delay in completing the hearing. See In re D.J.D., 171 N.C. App. 230, 243, 615 S.E.2d 26, 35 (2005) (since respondent moved for the continuance, he could demonstrate no prejudice from any delay in holding the termination hearing). We thus conclude that the trial court committed no abuse of discretion.
Respondent-grandfather additionally argues that the trial court erred by failing to enter the adjudicatory and dispositionalorder within thirty days as required by N.C. Gen. Stat. § 7B-807(b) and N.C. Gen. Stat. § 7B-905(a). In the instant case, the adjudicatory hearing was completed on 25 July 2007 and the adjudicatory order entered on 29 August 2007. The dispositional hearing was completed on 22 August 2007 and the order entered 26 September 2007. Thus, each order was filed only four days beyond the statutory mandate. "When a trial court fails to meet this mandate, our Court has held that the error does not establish a ground for reversal absent a showing of prejudice." In re T.H.T., ___ N.C. App. ___, ___, 648 S.E.2d 519, 527 (2007) (citing In re E.N.S., 164 N.C. App. 146, 153-54, 595 S.E.2d 167, 171-72, disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004)). Respondent-grandfather's visitation with J.M. was not affected, nor was his right to appeal the order. Id. Therefore, we conclude that respondent-grandfather was not prejudiced by the untimely filing of the orders.

III.
Respondent-grandmother next argues that adjudicatory findings of fact numbers 8, 10, 13, 14 and 15 were not based on competent evidence in the record. We disagree.
"Allegations of neglect must be proven by clear and convincing evidence. In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted). In finding of fact number eight, the trial court noted that J.M.'s daycare provider, Estelle Hinton, provided care for the juvenile outside of regular daycare hours. The trial court found as fact that:
when [Hinton] provided care for the juvenile she did not have any problems with [J.M.] She was able to take him out into public as well as to church and did not have any issues with the juvenile's behaviors. The juvenile further did not display behavioral problems while in her home.
Respondent-grandmother contends this finding of fact is contradicted by the testimony of Kim Dickens. We are not persuaded. Hinton testified that initially, J.M. was difficult, but that it was typical behavior for a child when they are first separated from a parent. However, Hinton further testified that after about three weeks, J.M. "started calming down[]" and she began to see improvement. Eventually, she was able to take him to church and out shopping. Hinton finally testified that overall, J.M. did not pose any behavioral problems that she could not readily handle. Thus, we conclude there was clear and convincing evidence in the record sufficient to support the trial court's finding of fact number eight.
In finding of fact number ten, the trial court found that during the period of time services were provided to respondent-grandmother to help her address her parenting issues, she "did not utilize any services that directly related to her care of the minor child or her own therapeutic needs." Respondent-grandmother contends this finding is contradicted by testimony of socialworkers that she sought therapy and agreed to attend classes required by DSS. We disagree.
Respondent-grandmother testified that in July 2006, J.M.'s pediatrician referred J.M. to UNC Memorial Hospital for his annual physical. Hospital personnel observed J.M., after which one hospital staff member stated that J.M. was ADD/ADHD hyperactive. Hospital personnel recommended he be admitted for a period of two weeks. Respondent-grandmother told hospital personnel she was "frustrated and it was overwhelming and [she] couldn't deal with him anymore"; yet, she declined to accept the recommendation, instead choosing to go on vacation. Additionally, respondent-grandmother failed to take medicine prescribed by mental health providers; was referred to an intensive twenty-six week parenting class, to which she went for only two or three sessions; and was referred to Clayton Counseling but went two times and did not go back. Heather Norton, a DSS social worker, testified that respondent-grandmother would not "follow through" on any services that focused on respondent-grandmother's needs. Thus, the trial court did not err in finding fact number ten.
In finding of fact thirteen, the trial court found that respondent-grandmother signed a safety agreement whereby she would not be left unsupervised with J.M. when J.M. visited the family. At the time, J.M. was staying with Estelle Hinton. The trial court found, however, that Hinton subsequently contacted DSS and stated she was no longer able to provide care for J.M. due to respondent-grandmother's "constant contacting and interfering with theHinton's caring of the minor child." Respondent-grandmother contends the trial court's finding is in error, because Hinton did not want to take care of J.M. due to his behavior, not due to respondent-grandmother. However, as discussed previously herein, Hinton testified she was able to care for J.M. Furthermore, Kim Dickens testified that Hinton was complaining about respondent-grandmother continuously "coming to the home unannounced." Respondent-grandmother would come over to use the telephone or the computer, or check to see if J.M.'s clothes were clean or if he had a bath. Dickens testified that "[i]t got to the point where it was interfering with [Hinton's] business . . . ." Thus, the trial court did not err in finding fact number thirteen.
In finding of fact fourteen, the trial court found that after respondent-grandmother made statements of harming the child to Heather Norton, she met with Dr. Robert Harris who found her thoughts of "homicidal ideation" to be real. Though Dr. Harris further expressed his belief that respondent-grandmother would not act on her homicidal thoughts, the trial court, based on respondent-grandmother's three prior suicide attempts, found that respondent-grandmother demonstrated an ability to act upon her harmful thoughts. We hold the record provides sufficient evidence to support the trial court's findings.
In finding of fact fifteen, the trial court found that respondent-grandmother violated a safety agreement in which she agreed not to care for J.M. unsupervised. Respondent-grandmother testified she signed an agreement that she would not beunsupervised when caring for J.M. but circumstances required that she care for J.M. alone. Furthermore, DSS Investigator Kim Dickens testified that respondent-grandmother signed an agreement not to care for J.M. unsupervised but Ms. Dickens found that respondent-grandmother had taken J.M. out of daycare and was caring for J.M. at home alone. Thus, the trial court did not err in finding of fact number fifteen. Accordingly, respondent-grandmother's assignments of error concerning the aforementioned findings of fact are overruled.

IV.
Respondent-grandmother next argues the trial court erred by not making appropriate findings of fact and conclusions of law in the adjudicatory and dispositional order as mandated by N.C. Gen. Stat. § 7B-807 and N.C. Gen. Stat. § 7B-905. Respondent-grandmother argues that at the time the petition was filed, J.M. was not neglected. Respondent-grandmother contends the trial court's adjudicatory finding of fact number twenty-one  that J.M was neglected  is in error, and the trial court erred by adjudicating J.M. a neglected and dependent juvenile. We do not agree.
In an abuse, neglect and dependency case, review is limited to the issue of whether the conclusion is supported by adequate findings of fact. Helms, 127 N.C. App. at 511, 491 S.E.2d at 676. "Dependent juvenile" is defined under North Carolina General Statute section 7B-101(9):
A juvenile in need of assistance or placement because the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or whose parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement.
N.C. Gen. Stat. § 7B-101(9) (2007). A "neglected juvenile" is defined under North Carolina General Statute section 7B-101(15):
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2007). In this case, the trial court found the following as fact:
12. On or about December 20, 2006, . . . [respondent-grandmother] expressed her concerns about harming the minor child. [Respondent-grandmother] expressed [in] December, particularly around the holidays as an extremely stressful time for her due to her own family problems and history and that the daycare in which [J.M.] had been attending was closed and she was going to be providing care for 5 days continuously without any relief. [Respondent-grandmother] made statements threatening to harm the minor child including but not limited to "kill him" although she later clarified stating "not really that I want to kill him . . . need a break, need to get away."
13. The investigator, Ms. Kim Dickens, put into place several safety agreements. The first safety agreement was signed by both [respondents] in which [respondent-grandmother] would not be unsupervised with the minor child when the juvenile would visit with the family. . . .
14. The Court finds the [respondent-grandmother] therefore has demonstrated an ability to act upon her harmful thoughts inthe past.
15. On or about January 26, 2007, [DSS] received a report that the [respondent-grandmother] was providing unsupervised care for the juvenile. The Court finds from the testimony of the [respondent-grandmother] as well as the testimony of Nell Starling that Ms. Starling arrived at the family residence on that date at approximately 10 am. At that time the [respondent-grandmother] was home alone with the minor child and expressed that she had been providing care for the minor child since [respondent-grandfather] left for work prior to 7:00 am that morning. [Respondent-grandmother] further expressed that she was aware that she shouldn't be left alone with the minor child thus being in violation of the safety assessment. . . The Court finds that the [DSS] upon returning the juvenile to the care of [respondents] with safety assessments in place, exercised reasonable efforts to keep the minor child in the home with [respondents] with safe guards in place. Upon violation of these safety assessments, these safe guards were compromised thus resulting in the necessary removal of the minor child.
16. The Court finds that the primary caretaker for the juvenile during the time in which the juvenile is home is the [respondent-grandmother]. The Court further finds however, that [respondent-grandfather] is aware of the problems of [respondent-grandmother] . . ., however, he continue[d] to allow [respondent-grandmother] to provide the care and does not seek alternative arrangements for the minor child. The Court further finds that both [respondents] blame others for their problems that they have encountered. . . The Court further finds from the testimony of [respondent-grandfather] that [respondent-grandfather] does not believe that there is any problem[] with their parenting although they have been involve[d] with [DSS] continuously for the last eight years. The Court finds that both [respondents] failed to recognize their responsibility in the child['s] current situation as well as any deficiencies in their parenting skills.
. . .
19 The Court finds that at the time of the juvenile's placement in the custody of [DSS] on January 26, 2007, neither [respondent] identified any alternative appropriate care placement for the minor child. The mother's current whereabouts were unknown at that time and any information about her whereabouts was not provided by [respondents] and the father of the minor child was incarcerated.
Based on the trial court's detailed findings of fact, we conclude the trial court could did not err by adjudicating J.M. a neglected and dependent juvenile.

V.
Respondent-grandmother next argues the trial court erred when it found that reunification efforts would be futile. Furthermore, both respondents argue that the evidence and findings of fact do not support the trial court's conclusion of law that reunification efforts should cease. After careful review of the record, briefs and contentions of the parties, we affirm the trial court's rulings.
Under North Carolina General Statute section 7B-507(b),
[i]n any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period oftime[.]
N.C. Gen. Stat. § 7B-507(b) (2007). The trial court may "order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts." In re Weiler, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003). This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition. Id. at 477-78, 581 S.E.2d at 137; see N.C. Gen. Stat. § 7B-507 (2007). A trial court's dispositional order must be based on the best interests of the child and the dispositional alternatives are left within the discretion of the trial court, which are not reversible absent an abuse of discretion. See In re Pittman, 149 N.C. App. 756, 766, 561 S.E.2d 560, 567 (2002). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." In re Robinson, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002) (citations and quotations omitted).
Here, in the dispositional order, the trial court found as fact that respondents have
continued to fail to recognize any parenting concerns in their home, placing blame on others. . . . [N]either [respondent][is] accepting responsibility for the current situation of the juvenile and the juvenile's placement in foster care. . . . [N]either[respondent has] made any attempt to resolve the protective issues in their home. . . .
The court additionally found that respondent-grandmother had refused to attend services aimed at addressing her parenting skills. The court further found that respondent-grandmother "would not be a receptive candidate for therapy as she does not believe she is in need of any therapeutic services." Meanwhile, the court found that J.M. was making "significant progress" outside of respondents' care, noting that he had: improved his verbal skills; was following directions; his behavioral problems have improved, and he was no longer hitting, fighting, kicking or biting; he could feed himself and drink out of a cup; and he was no longer having nightmares. The court noted that J.M. had been "released from some of his therapeutic services due to the progress he has made since being placed in foster care." Therefore, we hold that the findings of fact support the trial court's conclusion that reunification efforts would be futile, and that the trial court did not abuse its discretion by concluding it was in J.M.'s best interests to cease reunification efforts. Accordingly, we affirm.
Affirmed.
Judges WYNN and McCULLOUGH concur.
Report per Rule 30(e).