IN RE: J.M.M. P.L.M.
No. COA09-80
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
E. Marshall Woodall and Duncan B. McCormick for petitioner-appellee.
DeCillis & Turrentine, PLLC, by Karlene S. Turrentine, for respondent-appellant mother.
N.C. Administrative Office of the Courts, by Associate Legal Counsel Pamela Newell Williams, for appellee Guardian ad Litem.
GEER, Judge.
Respondent mother appeals from the trial court's permanency planning order entered 9 May 2008 and the order terminating her parental rights entered 31 October 2008. On appeal, she primarily contends that the trial court's conclusion that statutory grounds existed to terminate her parental rights is unsupported by its findings of fact and the evidence in the record. Based upon our review of the record, we hold that the trial court's findings of fact, which are supported by competent evidence, are sufficient to establish the ground of neglect under N.C. Gen. Stat. §7B-1111(a)(1) (2007). Because we find respondent mother's remaining arguments unpersuasive, we affirm.

Facts
On 20 September 2007, Harnett County Department of Social Services ("DSS") filed juvenile petitions alleging that respondent mother's children, J.M.M. ("Julie"), born in 2001, and P.L.M. ("Paul"), born in 2002, were neglected and dependent juveniles.[1] In those petitions, DSS alleged that it became involved with the family in the fall of 2006 after receiving reports of neglect. During that time, the family's home lacked running water, lacked proper electrical service, had insufficient food supplies, and had multiple fire and safety hazards. In December 2006, the children's father hit respondent mother in the mouth and attempted to choke her. Respondent mother sought a domestic violence protective order, but did not follow through on obtaining it.
After the domestic violence incident in December 2006, the family moved in with the children's paternal grandmother, who lived in a one-bedroom subsidized apartment. The presence of another family in the apartment jeopardized the paternal grandmother's subsidized housing, and she was warned by the landlord that she could be evicted for violating her lease agreement.
On 1 March 2007, respondent mother and the children's father were arrested and charged with breaking and entering. Respondent mother pled guilty to the charges and was placed on probation. When she violated the terms of her probation, she was imprisoned from 27 July 2007 through 7 March 2008. The children's father was jailed from March 2007 through May 2007, although the charges against him were ultimately dismissed. During the time their parents were incarcerated, the children remained with the paternal grandmother with DSS' consent.
When the children's father was released in May 2007, he returned to the paternal grandmother's apartment, causing her to again be in violation of her lease agreement. As a result, the paternal grandmother lost her subsidized housing and was required to move out by 30 September 2007. This event caused DSS to file the juvenile petitions, in which DSS alleged that "[n]either parent had secured stable employment to provide for the family" and that respondents had "not secured appropriate housing for the family."
On 20 September 2007, the trial court entered nonsecure custody orders giving DSS custody of the children. On 28 March 2008, the trial court, with the consent of respondent mother, entered an order adjudicating the children neglected and dependent, ordering that they remain in DSS custody, and adopting a plan of reunification.
Respondent mother was released from incarceration on 7 March 2008. She admitted that she smoked marijuana on the night of her release. On 11 March 2008, respondent mother met with the social worker assigned to her case. A week later, on 18 March 2008, she participated in a child and family team meeting and signed a family services agreement ("FSA"). On 19 March 2008, respondent mother was arrested and charged with possession of methamphetamine and drug paraphernalia. These charges were subsequently dismissed, and respondent mother was released from jail on 8 April 2008.
On 11 April 2008, the trial court held a review hearing and entered a memorandum order on the same date in which it continued the placement of the children in DSS custody, changed the permanent plan to adoption, ordered that reunification efforts and visitation with the parents cease, and set the matter for a permanency planning hearing on 9 May 2008. A formal order arising out of this hearing was entered on 23 May 2008. On 9 May 2008, the trial court held the permanency planning hearing and entered an order in which it continued the placement of the children in DSS custody, determined that the permanent plan should be adoption, and ordered that "[v]isitation between the respondent parents and juveniles shall remain ceased" and that DSS "remain[ed] released of reunification efforts with either parent."
On 24 June 2008, DSS filed a motion to terminate the parental rights of both parents. With respect to respondent mother, the motion alleged that grounds for termination existed under N.C. Gen. Stat. § 7B-1111(a)(1) in that respondent mother had neglected the children and under N.C. Gen. Stat. § 7B-1111(a)(3) in that the children had been placed in DSS custody for six months preceding the motion, and respondent mother had willfully failed to pay a reasonable portion of the cost of their care. The motion cited the same grounds for the children's father, but added willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7). On 31 October 2008, the trial court entered an order terminating each parent's parental rights on all the alleged grounds. On 21 November 2008, respondent mother filed a notice of appeal of both the 31 October 2008 termination order and the 9 May 2008 permanency planning order. The children's father did not appeal.

I
Respondent mother first argues that the trial court should have granted her motion to continue the termination of parental rights hearing. N.C. Gen. Stat. § 7B-1109(d) (2007) provides with respect to continuances of termination of parental rights hearings:
The court may for good cause shown continue the hearing for up to 90 days from the date of the initial petition in order to receive additional evidence including any reports or assessments that the court has requested, to allow the parties to conduct expeditious discovery, or to receive any other information needed in the best interests of the juvenile. Continuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance.
"A trial court's decision regarding a motion to continue is discretionary and will not be disturbed on appeal absent a showing of abuse of discretion." In re J.B., 172 N.C. App. 1, 10, 616 S.E.2d 264, 270 (2005). "Continuances are generally disfavored, and the burden of demonstrating sufficient grounds for continuation is placed upon the party seeking the continuation." Id.
Prior to the hearing in this case, counsel for the children's father moved for a continuance pursuant to N.C. Gen. Stat. § 7B-1109(d). He stated that the father, who was then incarcerated,"ha[d] informed [him] that he ha[d] a number of names for possible placement of the child," and he therefore would like more time "in order to have DSS look into these names before we move to this final hearing." Counsel explained that "it ha[d] been fairly burdensome for [him] to get up with [his] client and discuss his case with him to the extent [he] fe[lt] necessary to have this final hearing."
Respondent mother's counsel joined in the motion for continuance, stating that respondent mother had just been released from jail and that she might "have some additional names and some additional facts that we may be in a better position to present those, given a continuance." The trial court denied the motion, telling the parties that "[l]ack of due diligence on the part of your clients is not going to give this Court leave to continue it."
On appeal, respondent mother contends that because the trial court continued an earlier review hearing due to her incarceration at that time, it was an abuse of discretion for the trial court to refuse to continue the termination of parental rights hearing when she had just gotten out of jail two weeks earlier, had not had adequate time to correct issues alleged by DSS, and had not had adequate time to prepare for the hearing. Although this rationale for a continuance is not precisely the same as that asserted at trial, respondent mother has, in any event, never identified specifically why she needed additional preparation time beyond her vague musing that if given more time, she might be able to come up with more names for placement or more facts. Further, respondent mother has provided no explanation for why she was not, while incarcerated, able to do whatever was necessary to identify those names or facts. Accordingly, respondent mother has failed to show that the trial court abused its discretion in denying the continuance. See J.B., 172 N.C. App. at 10, 616 S.E.2d at 270 (rejecting parent's argument that trial court should have continued termination of parental rights hearing because she had recently been incarcerated and had not had adequate time to prepare and holding that "`[w]here the lack of preparation for trial is due to a party's own actions, the trial court does not err in denying a motion to continue'" (quoting In re Bishop, 92 N.C. App. 662, 666, 375 S.E.2d 676, 679 (1989))).

II
Respondent mother also argues that the trial court's findings of fact about her criminal record and incarceration amounted to an improper delegation of the trial court's fact-finding duty because the court "relied on the DSS and GAL reports and from them pulled its findings of fact and conclusions of law." This Court has explained that while "it is permissible for trial courts to consider all written reports and materials submitted in connection with those proceedings[,] . . . the trial court may not delegate its fact finding duty." In re J.S., 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004). An improper delegation occurs when the trial court "broadly incorporates these written reports from outside sources as its findings of fact." Id. There is no indication that improper delegation occurred in this case. The trial court did not state in its order that it was incorporating the DSS and GAL reports as its findings of fact. Indeed, it did not incorporate by reference the DSS and GAL reports at all. Instead, the court made its own findings of fact based on the information contained in the reports. Although respondent mother complains that the trial court "pulled its findings from those reports," the trial court was entitled to do so once the reports were admitted into evidence and if it determined that the reports were credible. We, therefore, overrule this assignment of error.

III
Respondent mother next contends the trial court erred in concluding that statutory grounds existed to terminate her parental rights. Because we ultimately conclude that the trial court properly concluded that grounds existed under N.C. Gen. Stat § 7B-1111(a)(1), we need not address whether the trial court erred in also concluding that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(3). See In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court.").
Under N.C. Gen. Stat. § 7B-1111(a)(1), a trial court may terminate parental rights if it finds that "[t]he parent has abused or neglected the juvenile." A neglected juvenile is defined as
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2007).
Respondent mother argues that the trial court's findings of fact fail to support a determination of neglect because they failed to "show [respondent mother's] neglect of the children was still occurring at the time of the termination hearing." According to respondent mother, "where a trial court fails to make a finding of existing neglect at the time of its order, it is reversible error for it to terminate a parent's rights to their child."
It is well established, as respondent mother argues, that "[a] finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). Contrary to respondent mother's position, however, our Supreme Court has recognized that "to require that termination of parental rights be based only upon evidence of events occurring after a prior adjudication of neglect which resulted in removal of the child from the custody of the parents would make it almost impossible to terminate parental rights on the ground of neglect." In re Ballard, 311 N.C. 708, 714, 319 S.E.2d 227, 232 (1984). Consequently, the trial court may consider "evidence of neglect by a parent prior to losing custody of a child  including an adjudication of such neglect"  as long as it also "consider[s] any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Id. at 715, 319 S.E.2d at 232. In In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000), this Court held that a trial court's conclusion that neglect existed was sufficiently supported by findings of fact that (1) an order had previously been entered adjudicating the juvenile as neglected, and (2) there was a probability of repetition of neglect.
In this case, the trial court, in finding of fact 14, first quoted the findings of fact in the prior order adjudicating the children as neglected juveniles. The court then found that "[t]estimony presented at this hearing [TPR hearing this date] has supported the foregoing findings" and stated further: "The court re-affirms and makes the findings set forth in paragraph 14, findings for his order." (Second bracketed material original.)
With respect to the probability of future neglect, the trial court made the following findings of fact. Respondent mother was incarcerated from 27 July 2007 through 7 March 2008 because of a probation violation resulting in revocation of her probation. Shortly after respondent mother's release, she met with a DSS social worker and on 18 March 2008, attended a child and family team meeting and signed an FSA. Nevertheless, after signing the FSA, the only other contact the social worker had with respondent mother was a voice mail message on 23 July 2008. Although the social worker attempted to return the call, she was unable to make contact with respondent mother and, through the date of the termination of parental rights hearing, did not know where respondent mother was living. Further, although respondent mother attended hearings while she was incarcerated, once she was released, she did not attend the review hearing where efforts at reunification were ordered ceased or the permanency planning hearing where the trial court established a plan of adoption for the children.
Respondent mother's FSA required that she locate and maintain safe, sanitary, and stable housing with appropriate utilities; locate and maintain stable employment; not participate in domestic violence; pay child support; and visit with the children as scheduled. Respondent mother also agreed to participate in a "QSAP assessment and follow recommendations," remain drug free, participate in a psychological evaluation and follow recommendations, and participate in random drug screens. The trial court found that "[t]he mother has failed to substantially comply with the provisions of the FSA" and that even though respondent mother was incarcerated from 19 March 2008 until 8 April 2008, "she had sufficient opportunity to commence working on the provisions of her obligations as expressed in the FSA."
Contrary to the FSA and even though the social worker had discussed the need to pay support, respondent mother did not pay any child support. She had only one visit with the children and failed (with the exception of the one voice mail) to contact the social worker about her children. The trial court further found that respondent mother "has failed to exercise her parental responsibility to care for her children and failed to make an appropriate alternative placement for them," noting that respondent mother's sole suggestion of someone to care for the children was her mother, who could not be approved by DSS because of who was living in her home.
The trial court ultimately found:
The parents have left the care of the juveniles to others. They have both failed to appropriately seek and obtain an improvement of their parental skills and abilities to be able to properly care for and supervise the juveniles. They have failed to be present even when they were not incarcerated. They have failed to extend love and care to the juveniles during the juveniles' young minority and need for parental care.
The trial court then summarized its reasoning in determining that respondent mother had neglected the children: "Neglect of the juveniles by [respondent mother] continue[s] to the present in that the neglectful actions by [respondent mother] in December 2006 and September 2007, followed by the failure to make progress on the plan of reunification during the time the juveniles have been in foster care create the likelihood that if the juveniles were returned to the mother, the juveniles would be at risk of harm or neglect."
These findings of fact are sufficient to support the trial court's conclusion that the ground of neglect existed. See In re D.B., C.B., 186 N.C. App. 556, 562, 652 S.E.2d 56, 60 (2007)(affirming trial court's conclusion of neglect where trial court found respondent mother engaged in domestic violence in front of children and failed to comply with her case plan, which required her to attend domestic violence classes and counseling sessions and address her substance abuse issues), aff'd per curiam, 362 N.C. 345, 661 S.E.2d 734 (2008); In re E.T.S., 175 N.C. App. 32, 39-40, 623 S.E.2d 300, 304 (2005) (upholding conclusion of neglect where trial court found respondent parent failed to maintain stable housing, was unemployed at time of hearing, had missed numerous child support payments, had not cooperated with social workers or complied with her case plan, and had been in infrequent contact with DSS); In re Ore, 160 N.C. App. 586, 589, 586 S.E.2d 486, 488 (2003) (holding trial court's conclusion of neglect supported where court found respondent parent had history of criminal incarceration and substance abuse).
Respondent mother argues that some of the trial court's findings of fact were, however, in error. First, she contends that the trial court's finding that the children have no one available to meet their needs was error because the trial court (1) ignored the fact that respondent father had presented names of possible placement options to DSS and (2) failed to acknowledge that respondent mother could become a viable option in the future since she had been released from prison and had a history of employment.
Respondent mother, however, cites to no evidence in the record to support these points. As for the options given by respondent father to DSS, the social worker testified that upon receiving those names, DSS investigated them as possible placement options but that all of them fell through, either because the person never called DSS back or because the person was deemed an inappropriate placement. As for the future potential viability of respondent mother as a placement option, the trial court was not required to speculate that respondent mother might one day become a viable placement option based solely on a history of employment.
Respondent mother next argues that the trial court should not have considered and made findings about the evidence in the record that the children had been allowed to live in an environment injurious to their welfare in the past, because this evidence was not relevant to their situation at the time of the termination hearing. As noted above, however, our Supreme Court in Ballard specifically held that past neglect could be considered in a termination of parental rights hearing, although such neglect, standing alone, would be insufficient to terminate parental rights.
Respondent mother also argues that the trial court should not have considered and found as a fact that she had no contact with DSS, because the trial court had already ordered in a prior order that DSS cease reunification efforts with the family. This finding was supported by evidence in the record. Social worker Sara Crook testified that after respondent mother was released from prison and reunification efforts had been ceased, Crook asked respondent mother "to please keep in touch with [her], continue working on the activities in her case plan[,]" but that she did not do so. Crook further testified that after respondent mother was released from jail, she did not make contact with DSS.
In a similar vein, respondent mother contends that the trial court should not have considered and made findings as to her arrest on 19 March 2008, because those charges were later dismissed. We note that the trial court expressly found that respondent mother was released as to those charges on 8 April 2008. We read the finding of fact as reflecting the dates of respondent mother's incarcerations, a fact relevant to the proceedings. Indeed, respondent mother has repeatedly argued that the fact she had just gotten out of jail on 8 April 2008 is relevant to the issues before the trial court.
Finally, respondent mother argues that the trial court improperly made a finding that she failed to pursue a domestic violence action against respondent father, contending that DSS did not aid her in pursuing the matter and therefore her inability to follow through should not have been considered. Respondent mother cites no authority, however, requiring DSS to assist her in obtaining a domestic violence protective order or any evidence that respondent mother needed DSS' help in doing so.
As for respondent mother's argument that the trial court erred in finding that she failed to comply with her FSA and that she had an opportunity to do so, respondent mother argues only  without citation to the record  that DSS did not contact her in jail to assist her in setting up parenting classes, psychological assessments, and treatment. Respondent mother also argues that DSS did not "let [respondent mother] know where the children were so [respondent mother] could make some efforts at contact while in jail." She does not, however, address her failure to contact DSS, to inquire about her children, or to work on the FSA after her release. Respondent mother's arguments go to the weight and credibility of the evidence and not whether the specific findings of fact are supported by the evidence.
We, therefore, conclude that the trial court's findings of fact are supported by clear, cogent, and convincing evidence. Because those findings of fact support the trial court's conclusion that respondent mother neglected the children, we hold that the trial court did not err in determining that statutory grounds existed for termination of her parental rights.
In a termination of parental rights hearing, if the trial court finds that one or more statutory grounds for termination exist, the court moves to the disposition stage, in which it determines whether termination is in the best interests of the children. N.C. Gen. Stat. § 7B-1110(a) (2007). Under N.C. Gen. Stat. § 7B-1110(a), in determining whether termination of parental rights is in the juvenile's best interest, the court shall consider (1) the juvenile's age; (2) the likelihood of adoption of the juvenile; (3) whether termination will aid in accomplishment of the juvenile's permanent plan; (4) the bond between the juvenile and the parent; (5) the quality of relationship between the juvenile and the proposed adoptive placement; and (6) any other relevant consideration. We review the trial court's decision at this stage for abuse of discretion. In re Shepard, 162 N.C. App. 215, 222, 591 S.E.2d 1, 6, disc. review denied, 358 N.C. 543, 599 S.E.2d 42 (2004).
Respondent mother does not challenge the trial court's findings that, at the time of the termination hearing, the children were thriving in school, they fit in well with the foster family, they were active in their community and church, they were very bonded with their foster mother, and all their physical, mental, and emotional needs were being met. She points, however, to the trial court's finding that the children's foster mother is currently experiencing some medical issues that raise questions about her ability to eventually adopt the children and argues that this finding demonstrates that termination of her parental rights was not in the children's best interests.
Respondent mother's argument overlooks the trial court's finding, supported by the record, that even if the children's current foster mother could not adopt the children due to her health, the children "are adoptable." Indeed, the social worker testified that the children were "definitely" adoptable. In light of the trial court's findings regarding the children's current status together with its finding that the children are adoptable regardless of the health of the current foster mother, we cannot conclude that the trial court abused its discretion in determining that termination of respondent mother's parental rights was in the children's best interests. We, therefore, affirm the trial court's 31 October 2008 order terminating respondent mother's parental rights.

IV
Finally, respondent mother argues that the trial court erred in finding that DSS made reasonable efforts towards reunification of the children with respondent mother. Respondent mother's assignment of error on this issue identifies a 9 May 2008 permanency planning order, which was also referenced in respondent mother's notice of appeal. It appears that respondent mother is trying to appeal the 9 May 2008 permanency planning order under N.C. Gen. Stat. § 7B-1001(a)(5) (2007), which provides that "[a]n order entered under G.S. 7B-507(c) with rights to appeal properly preserved as provided in that subsection" can be appealed "together with an appeal of the termination of parental rights order" to this Court.
N.C. Gen. Stat. § 7B-507(c) provides, in part, that
[a]t any hearing at which the court finds and orders that reasonable efforts to reunify a family shall cease, the affected parent, guardian, or custodian or that parent, guardian, or custodian's counsel may give notice to preserve the parent, guardian, or custodian's right to appeal the finding and order in accordance with G.S. 7B-1001(a)(5). Notice may be given in open court or in writing within 10 days of the hearing at which the court orders the efforts to reunify the family to cease.
N.C. Gen. Stat. § 7B-1001(a)(5) in turn sets out three further requirements: (1) a motion or petition to terminate parental rights was heard and granted; (2) the termination order was appealed properly and timely; and (3) the order to cease reunification was assigned as an error in the record on appeal of the termination order.
Here, the record does not indicate that respondent mother complied with the statutory requirements for appealing the 9 May 2008 order. The transcript of the 9 May 2008 hearing is only a single page and does not contain any oral notice of appeal by respondent mother. The record on appeal contains no other written notice of appeal from the 9 May 2008 order other than the one filed on 21 November 2008, well beyond the 10-day period following the 9 May 2008 hearing. Thus, there is nothing in the record to show that respondent mother properly preserved her right to appeal the order under § 7B-507(c). We, therefore, lack jurisdiction to consider the 9 May 2008 order.[2]
Affirmed.
Judges BRYANT and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] Pseudonyms have been used throughout the opinion to protect the children's privacy and for ease of reading.
[2] Even if the 9 May 2008 order were properly before us, respondent mother would not be able to show any harm from that order. The trial court originally ordered DSS to cease reunification efforts in an 11 April 2008 memorandum order. A formal order was ultimately filed on 23 May 2008 containing the same decree. Since respondent mother has not appealed from either the 11 April 2008 or the 23 May 2008 order, those orders  allowing cessation of reunification efforts  would remain standing.